**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ELLIOTTE PARTICK COLEMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 1:05-CV-1206 (RCL) |
| INTERNATIONAL BROTHERHOOD | ) | |
| OF ELECTRICAL WORKERS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

---

**MEMORANDUM OF POINTS AND AUTHORITIES IN**
**SUPPORT OF DEFENDANT INTERNATIONAL BROTHERHOOD**
**OF ELECTRICAL WORKERS' MOTION TO DISMISS**

---

Robert D. Kurnick, D.C. Bar No. 243683
Sherman, Dunn, Cohen, Leifer & Yellig, P.C.
900 Seventh Street, N.W., Suit 1000
Washington, D.C. 20001
(202) 785-9300

Attorney for Defendant International
Brotherhood of Electrical Workers

# TABLE OF CONTENTS

TABLE OF AUTHORTIES ................................................................................ iii

INTRODUCTION ......................................................................................... 1

STATEMENT OF THE CASE ........................................................................ 3

STATEMENT OF FACTS ............................................................................. 3

ARGUMENT ............................................................................................... 7

    I.  The Amended Complaint Fails to State a Claim Against the
        IBEW for a Violation of Title VII of the Civil Rights Act. ................. 8

      A.  Coleman did not file a charge of Discrimination Against
           the IBEW ....................................................................................... .8

      B.  Coleman has Failed to State a Timely Claim Against the
           IBEW for Unlawful Retaliation under Title VII ..................... .10

    II.  The Amended Complaint Fails to State a Claim Against the
        IBEW for a Violation of D.C. Human Rights Act. .......................... 12

      A.  Coleman's Claim under the D.C. Human Rights Act is
           Preempted by Section 301 of the Labor Management
           Relations Act, 29 U.S.C. §185(a) ............................................. .13

      B.  Coleman has Failed to State a Timely Claim Against the
           IBEW for Aiding and Abetting Unlawful Retaliation
           under the D.C. Human Rights Act .......................................... .16

    III.  The Amended Complaint Fails to State a Claim Against the
        IBEW for a Breach of the Duty of Fair Representation. ............... 18

      A.  The IBEW Did Not Owe Coleman a Duty of Fair
           Representation ............................................................................. .18

      B.  Coleman's Fair Representation Claim is Time-Barred ............. .21

    IV.  The Amended Complaint Fails to State a Claim Against the
        IBEW for Intentional Infliction of Emotional Distress ................. 23

A. Coleman's Claim for Intentional Infliction of Emotional Distress is Preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. §185(a) ......................... .24

B. Coleman has Failed to State a Claim Against the IBEW for Aiding and Abetting Pepco's Intentional Infliction of Emotional Distress .................................................................... .25

CONCLUSION ................................................................................. 29

# TABLE OF AUTHORITIES

## CASES

*ACLU Foundation of Southern California v. Barr*, 952 F.2d 457 (D.C. Cir. 1991) ........................................................................................ 7

*Adams v. George W. Cochran & Co.*, 597 A.2d 28 (D.C. 1991) ........................ 27

*Adkins v. Safeway Stores*, 1991 U.S. Dist. LEXIS 12616 (D.D.C. June 21, 1991) ................................................................................................ 21

*Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202 (1985) ................................ 14, 16

*Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557 (1968) .................................. 13

*BIW Deceived v. Local S6, Marine and Shipbuilding Workers*, 132 F.3d 824 (1st Cir. 1997) ......................................................................... 20

*\*Baker v. Newspaper and Graphic Communications Union*, 628 F.2d 156 (D.C. Cir. 1980) ............................................................................. 19, 20

*Berger v. Iron Workers Local 201*, 843 F.2d 1395 (D.C. Cir. 1988) ............. 9, 11

*Black v. NFL Players' Association*, 87 F. Supp. 2d 1 (D.D.C. 2000) ............... 14

*Borg v. Greyhound Lines, Inc.*, 1984 U.S. Dist. LEXIS 24852 (N.D. Cal. July 17, 1984) ............................................................................... 19

*Boulton v. Institute of International Education*, 808 A.2d 499 (D.C. 2002) ........................................................................................... 16

*Brown v. Brody*, 199 F.3d 446 (D.C. Cir. 1999) ................................................ 11

*Brown v. Gino Morena Enterprises*, 44 F. Supp. 2d 41 (D.D.C. 1999) ............ 14

*Caputo v. Letter Carriers*, 730 F. Supp. 1221 (E.D.N.Y. 1990) ........................ 23

*Carbon Fuel Co. v. Mine Workers*, 444 U.S. 212 (1979) .................................... 8

*Carr v. Local 1593, IBEW*, 371 F. Supp. 2d 1097 (D. N.D. 2005) ............. 19, 20

*\*Caterpillar, Inc, v. Williams*, 482 U.S. 386 (1987) .................................. 13, 14

*Condon v. Local 2944, Steelworkers*, 683 F.2d 590 (1st Cir. 1982) ................ 20

*Conley v. Gibson*, 355 U.S. 41 (1957) ................................................. 7

*Crowley v. North American Telecommunications Association*, 691 A.2d 1169 (D.C. 1997) ........................................................................ 26

*\*DelCostello v. Teamsters*, 462 U.S. 151 (1983) ............................................. 21

*Doe v. United States Department of Justice*, 753 F.2d 1092 (D.C. Cir. 1985) ................................................................................... 22

*Douglas v. American Information Technologies Corp.*, 877 F.2d 565 (7th Cir. 1989) .............................................................................. 24

*Elliott v. Healthcare Corp.*, 629 A.2d 6 (D.C. 1993) ......................................... 27

*Fant v. New England Power Service Co.*, 239 F.3d 8 (1st Cir. 2001) .............. 15

*Fernandez-Montes v. Allied Pilots Association*, 987 F.2d 278 (5th Cir. 1993) .................................................................................. 3

*Ford Motor Co. v. Huffman*, 345 U.S. 330 (1953) ........................................... 22

*Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1 (1983) ................................................................................ 13

*\*Gallagher v. IBEW*, 127 F. Supp. 2d 139 (N.D.N.Y. 2000) ............................. 9

*Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983) .................................. 25, 27

*Hall v. Printing and Graphic Arts Union*, 696 F.2d 494 (7th Cir. 1982) ........ 20

*Hammons v. Adams*, 783 F.2d 597 (5th Cir. 1986) ........................................ 22

*Hoffman v. Hill and Knowlton, Inc.*, 777 F. Supp. 1003 (D.D.C. 1991) .......... 26

*Howard University v. Best*, 484 A.2d 958 (D.C. 1984) ..................................... 27

*IBEW v. Hechler*, 481 U.S. 851 (1987) ............................................................ 14

*Johnson v. Food and Commercial Workers*, 828 F.2d 961 (3rd Cir. 1987) ................................................................................... 20

*Johnson v. Palma*, 931 F.2d 203 (2nd Cir. 1991)................................................ 9

*Jones v. Truck Drivers Local 299*, 838 F.2d 856 (6th Cir. 1988).................... 15

*Joyner v. Sibley Memorial Hospital,* 826 A.2d 362 (D.C. 2003) ...................... 26

*\*Kerrigan v. Britches of Georgetowne, Inc.*, 705 A.2d 624 (D.C. 1997) .......... 26

*Kuhn v. Letter Carriers*, 528 F.2d 767 (8th Cir. 1976).................................... 19

*Madison v. Set Painters Local 729*, 132 F. Supp. 2d 1244 (C.D. Cal. 2000)........................................................................................................... 20

*Mattis v. Massman*, 355 F.3d 902 (6th Cir. 2004) .......................................... 25

*Maynard v. Revere Copper Products*, 773 F.2d 733 (6th Cir. 1985)............... 20

*\*McManus v. Washington Gas Light Co.*, 1991 U.S. Dist. LEXIS 14539 (D.D.C. Oct. 15, 1991) ................................................................................... 9

*National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) .................... 11

*Newberry v. Pacific Racing Association*, 854 F.2d 1142 (9th Cir 1988).......... 25

*Oxford Asset Management, Ltd. v. Jaharis*, 297 F.3d 1182 (11th Cir. 2002)............................................................................................................. 3

*Papasan v. Allain*, 478 U.S. 265 (1986)............................................................ 3

*Peterson v. Air Line Pilots*, 759 F.2d 1161 (4th Cir. 1985) ............................. 20

*Price v. Crestar Securities Corp.*, 44 F. Supp. 2d 351 (D.D.C. 1999)............... 7

*Reece v. Houston Lighting & Power Co.*, 79 F.3d 485 (5th Cir. 1996)............. 15

*Richardson v. Steelworkers*, 864 F.2d 1162 (5th Cir. 1989) ........................... 20

*\*Rochon v. Ashcroft*, 319 F. Supp. 2d 23 (D.D.C. 2004)......................... 4, 7, 11

*Rodolico v. Unisys Corp.*, 96 F. Supp. 2d 184 (E.D.N.Y. 2000) ...................... 20

*Sine v. Teamsters Local 992*, 730 F.2d 964 (4th Cir. 1984)............................ 20

*Sinyard v. Foote & Davies Division*, 577 F.2d 943 (5th Cir. 1978) ................ 20

*Smith v. Union Labor Life Insurance Co.*, 620 A.2d 265 (D.C. 1993) ............ 27

*Snay v. U.S. Postal Service*, 31 F. Supp. 2d 92 (N.D.N.Y. 1998).................... 20

*Sokos v. Hilton Hotels Corp.*, 283 F. Supp. 2d 42 (D.D.C. 2003).................... 14

*Square D Co. v. Niagara Frontier Tariff Bureau*, 476 U.S. 409 (1986) ........... 3

*Stache v. Bricklayers*, 852 F.2d 1231 (9th Cir. 1988) ........................................ 9

*Stewart v. Evans*, 275 F.3d 1126 (D.C. Cir. 2002) ........................................... 11

*Thomas v. Letter Carriers*, 225 F.3d 1149 (10th Cir. 2000)........................... 20

*Tongay v. The Kroger Co.*, 860 F.2d 298 (8th Cir. 1988) ................................ 20

*Ungar v. The Islamic Republic of Iran*, 211 F. Supp. 2d 91 (D.D.C. 2002)................................................................................................... 25, 28

*\*Vaca v. Sipes*, 386 U.S. 171 (1967) .................................................... 18, 20, 22

*Walker v. Washington Metropolitan Area Transit Authority*, 102 F. Supp. 2d 24 (D.D.C. 2000) ........................................................................... 11

*Wallace v. Skadden, Arps, Slate, Meagher & Flom*, 715 A.2d 873 (D.C. 1998)................................................................................................. 10, 16

*Walters v. Roadway Express, Inc.*, 400 F. Supp. 6 (S.D. Miss. 1975), *aff'd*, 577 F.2d 521 (5th Cir. 1977) ............................................................. 20

*Welch v. General Motors Corp.*, 922 F.2d 287 (6th Cir. 1990) ........................ 20

*Wells v. Railway Conductors*, 442 F.2d 1176 (7th Cir. 1971)......................... 18

*Whitten v. Anchor Motor Freight, Inc.*, 521 F.2d 1335 (6th Cir. 1975) .......... 22

*Wilhelm v. Sunrise Northeast, Inc.*, 923 F. Supp. 330 (D. Conn. 1995) ......... 20

*Wood v. Chao*, 275 F.3d 107 (D.C. Cir. 2001)...................................................... 3

## STATUTES

42 U.S.C. § 2000e-3(a).......................................................................................... 10

42 U.S.C. § 2000e-5(c)(1) ................................................................ 11

42 U.S.C. § 2000e-5(f)(1) ................................................................ 8

29 U.S.C. §159(a) ............................................................................ 18

29 U.S.C. §185(a) ............................................................... 2, 13, 24

D.C. Code. Ann. 2-1402.62 .......................................................... 6, 12

D.C. Code Ann. 2-1403.16(a) .......................................................... 16

**MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF DEFENDANT INTERNATIONAL BROTHERHOOD
OF ELECTRICAL WORKERS' MOTION TO DISMISS**

<u>INTRODUCTION</u>

According to his amended complaint, the pro se plaintiff in this case, Elliotte Patrick Coleman ("Coleman"), is a former employee of the Potomac Electric Power Company ("Pepco") where he and other Pepco employees were represented by Local Union 1900 of the International Brotherhood of Electrical Workers ("Local 1900").[1] (Amended Complaint ("Cmpl.") ¶¶ 5, 6, 7)  The gravamen of Coleman's complaint is that Pepco retaliated against him for engaging in conduct protected by Title VII of the Civil Rights Act and the D.C. Human Rights Act and that the International Brotherhood of Electrical Workers ("IBEW") aided and abetted that retaliation by failing to provide him with adequate representation in the contractual grievance-arbitration procedure.

His various claims have several flaws, but one fundamental flaw dooms all of his claims:  As Coleman acknowledges, he was represented, not by the IBEW, but by Local 1900.  (Cmpl. ¶ 6)  The IBEW, consequently, had neither the duty nor the ability to take any action on his behalf with respect to his employer.  The IBEW therefore cannot be deemed liable for its alleged failure to represent Coleman in the grievance procedure or in any other context.

---

[1]     Coleman has filed three separate actions against his employer, two of which have been dismissed and one of which is still pending.  *Coleman v. Potomac Electric Power Co.,* No. 1:03-cv-247 (RMC); *Coleman v. Potomac Electric Power Co.,* No. 1:03-cv-1202 (RMC); *Coleman v. Potomac Electric Power Co.,* No. 1:05-cv-237 (RMC).

The amended complaint includes three counts. The first alleges that the IBEW violated Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et. seq.*, and the D.C. Human Rights Act ("DCHRA"), D.C. Code Ann. § 2-1401.01 *et seq.*, by aiding and abetting Pepco in retaliating against Coleman. (Cmpl. ¶¶ 52-60) That Title VII claim, however, is barred because Coleman filed a charge of discrimination with the EEOC against Local 1900, but not against the IBEW. Coleman has also failed to state a claim under Title VII because he has not alleged that the IBEW took any adverse employment action against him and because Title VII does not provide a cause of action against those who allegedly aid and abet others.

Coleman's claim under the DCHRA must be dismissed because the claim would require the Court to interpret a collective bargaining agreement and is therefore preempted by §301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). Coleman has also failed to allege any conduct by the IBEW that could be the basis of a timely aiding or abetting claim under the DCHRA.

The second count alleges that the IBEW breached a duty of fair representation by failing to process his grievances or to take appropriate action in response to his complaints of harassment. (Cmpl. ¶¶ 61-63) That claim must be dismissed because the IBEW is not Coleman's bargaining representative and therefore does not owe him a duty and fair representation. The claim is also time-barred, because with one exception, all of the conduct alleged took place more than six months before Coleman filed his complaint, and that one exception does not constitute a breach of the duty of fair representation.

The third count alleges that the IBEW aided and abetted Pepco's intentional infliction of emotional distress. (Cmpl. ¶¶ 64-67) Like his claim for violation of the DCHRA, that state law claim is preempted by §301 of the LMRA. Coleman, moreover, has failed to state a claim under applicable D.C. law because he has not alleged that Pepco engaged in conduct that could be characterized as outrageous or any facts supporting his claim that the IBEW aided and abetted Pepco's allegedly tortious conduct.

<u>STATEMENT OF THE CASE</u>

Coleman submitted his initial complaint on June 3, 2005. That complaint was filed on June 20, 2005. He filed an amended complaint on December 13, 2005.

<u>STATEMENT OF FACTS</u>

In ruling on a motion to dismiss, a court should accept as true all facts alleged in the complaint. *Square D Co. v. Niagara Frontier Tariff Bureau*, 476 U.S. 409, 411 (1986); *Wood v. Chao*, 275 F.3d 107, 108 n.2 (D.C. Cir. 2001). Conclusory allegations and conclusions of law, however, should not be accepted. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "[C]onclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Management, Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002); *Fernandez-Montes v. Allied Pilots Association*, 987 F.2d 278, 284 (5th Cir. 1993).

Coleman alleges that he was a customer service representative employed by Pepco. (Cmpl. ¶¶ 5, 7) Customer service representatives, like other Pepco employees, are represented in collective bargaining by Local 1900. (Cmpl. ¶ 6) In

its collective bargaining agreement with Local 1900, Pepco recognizes Local 1900 as "the sole collective bargaining agent for the bargaining unit." (Declaration of John Coleman, Ex. B § 2.01) That agreement includes a grievance-arbitration procedure which permits Local 1900 to file, process and arbitrate grievances. (*Id.* at Arts. 17, 18) The IBEW is not a party to that agreement and has no right to process grievances on behalf of any Pepco employees. (*Id.*)[2]

In May 2000, Coleman filed a charge of discrimination against Pepco. (Cmpl. ¶ 14) Pepco allegedly retaliated against Coleman by placing him on "decision-making leave" (a form of suspension) in February 2001. (Cmpl. ¶ 15) Local 1900 filed a grievance on Coleman's behalf challenging his discipline, but officials of Local 1900 allegedly instructed shop stewards not to discuss those grievances with Coleman. (Cmpl. ¶¶ 15-21)

Pepco terminated Coleman in January 2002. (Cmpl. ¶ 22) Local 1900 grieved Coleman's discharge and prevailed on his behalf in arbitration. (Cmpl. ¶ 24) Pepco reinstated Coleman but continued to harass him by issuing a written reminder for violating its attendance policy, opening his mail, placing him on decision making leave and denying him family medical leave. (Cmpl. ¶ 24) Coleman complained to Local 1900 about the harassment, but Local 1900 "failed to

---

[2]    In deciding a Rule 12(b)(6) motion to dismiss, a court can consider the facts alleged in the complaint and any documents that the complaint incorporates by reference. *Rochon v. Ashcroft*, 319 F. Supp. 2d 23, 28 (D.D.C. 2004). This brief contains citations to two documents: the collective bargaining agreement between Local 1900 and Pepco and the charge of discrimination that Coleman filed with the EEOC. Because Coleman's amended complaint contains several references to these documents (Cmpl. ¶¶ 3, 4(c), 10, 26, 38), citation to them does not convert the IBEW's motion to dismiss into one for summary judgment.

take appropriate remedial action." (Cmpl. ¶ 25)

In May 2003, Coleman filed a lawsuit against Pepco in federal district alleging retaliation (Cmpl. ¶ 25) – a suit that this Court later dismissed. *Coleman v. Potomac Electric Power Co.,* No. 1:03-cv-1202 (RMC).

The amended complaint then describes grievance meetings that took place in 2003 on the various grievances filed on Coleman's behalf (presumably by Local 1900) and alleges that during these meetings "Defendant" (presumably referring to the IBEW) refused to enforce the grievance provisions of the collective bargaining agreement by insisting on a timely meeting and failed to object when Pepco did not present evidence supporting its actions. (Cmpl. ¶¶ 26-30)

On December 5, 2003, Coleman complained of harassment to Pepco's Department of Employee Relations. Rather than respond to his complaint, Pepco terminated him in March 2004. (Cmpl. ¶¶ 31-33) Local 1900 informed Coleman that it would file a grievance challenging his discharge and attempted, without success, to negotiate a settlement. (Cmpl. ¶¶ 34-35)

Officials of Local 1900 met with Coleman twice in June 2004 to prepare for an arbitration hearing challenging Pepco's issuance of a written reminder to Coleman. One of those two officials, however, did not attend the arbitration hearing and was therefore not available to testify that Pepco's testimony was inconsistent with statements made during the grievance procedure. (Cmpl. ¶¶ 40-43) The arbitrator denied that grievance in July 2004. (Cmpl. ¶ 44)

Later in July, Coleman allegedly "forwarded Defendant correspondence"

expressing concern for its "repeated mishandling of minutes and notes" and its "refusal to be forthcoming with its recollections of statements made by Pepco during meetings." (Cmpl. ¶ 45)  In August 2004, Coleman asked to meet with "Defendant" regarding two pending grievances.  Defendant (presumably the IBEW) did not respond to his correspondence and refused to meet with him.[3] (Cmpl. ¶¶ 45, 46)

In July 2005, "Defendant" contacted Coleman to inform him that it was attempting to schedule an arbitration hearing for late July.  Coleman expressed concern that the defendant had not responded to his prior expressions of concern. "Again Defendant refused to respond." (Cmpl. ¶ 47)

On November 4, 2004, Coleman filed a charge of discrimination with the EEOC.  (Cmpl. ¶3)  That charge lists the respondent as "Int'l Brotherhood of Electrical Wk." (Declaration of John Coleman, Ex. A)  The address provided was that of Local 1900 in Largo, Maryland and not the IBEW's address in Washington, D.C.[4]  The body of the charge shows that the intended respondent was Local 1900 and not the IBEW.  It stated:

> I am a member of the above named Union (Local 1900).  Although the Union has represented me in the past, it has done so in a manner to conceal my employers deliberate acts of retaliation and harassment for filing an EEOC complaint of employment discrimination in May 2000, in July 2002, in June 2004 and in other ways expressing good faith opposition to acts I reasonably believed to be discriminatory.  The Union has constantly failed to process grievances in accordance with

---

[3]    The IBEW assumes that in the amended complaint the term "Defendant" refers to the IBEW.  In some paragraphs, however, Coleman appears to use "Defendant and "Local 1900" interchangeably.  *See, e.g.,* Cmpl. ¶ 38.

[4]    Coleman knows that the IBEW's offices are located in Washington, D.C.  (*See* Cmpl. ¶ 6)

the Contract Agreement between the Company and Local 1900, and in other ways enforce the contract. The Union has cooperated with the Company in maintaining a practice of retaliating against and harassing employees who assert rights afforded them.

(*Id.*) The charge was served on Local 1900. It was never sent to or received by the IBEW. (Declaration of John Coleman; Declaration of Lawrence F. Neidig, Jr.)[5]

## ARGUMENT

A Rule 12(b)(6) motion to dismiss "tests the legal sufficiency of the complaint." *ACLU Foundation of Southern California v. Barr*, 952 F.2d 457, 472 (D.C. Cir. 1991). The question under Rule 12(b)(6) is not whether the plaintiff will prevail, but whether he has properly stated a claim. *Price v. Crestar Securities Corp.*, 44 F. Supp. 2d 351, 353 (D.D.C. 1999) A complaint should not be dismissed "unless it appears beyond doubt that that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). A claim, however, should be dismissed if "it is clear that no relief can be granted under any set of facts that can be proved consistent with the allegations." *Rochon v. Ashcroft,* 319 F. Supp. 2d 23, 29 (D.D.C. 2004).

Coleman's EEOC charge and amended complaint show that he has – whether intentionally or not – sued the wrong defendant. His charge of discrimination is

---

[5]    John Coleman (who is not related to the plaintiff) states that the charge was received by Local 1900 and not sent to the IBEW. Neidig states that the IBEW did not receive a copy of the charge. These statements are offered only to show that the IBEW did not receive the charge and therefore had no opportunity to respond or participate in any conciliation process that the charge may have produced. The IBEW recognizes that these statements are outside the scope of the complaint. If, however, they are deemed immaterial, we ask the Court to disregard them and to treat the IBEW's motion as one for dismissal, rather than one for summary judgment.

clearly aimed at Local 1900 and not the IBEW.  The complaint acknowledges that Local 1900 was his bargaining representative and the collective bargaining agreement to which the complaint refers does not include the IBEW as a party or give the IBEW any authority to process grievances or to take any other action on Coleman's behalf.  Indeed, the allegations in his amended complaint refer almost entirely to Local 1900 and its officials and stewards.  Nothing in the amended complaint supports the proposition that the IBEW either owed or beached any duty imposed by law to Coleman.[6]

## I.  The Amended Complaint Fails to State a Claim Against the IBEW for a Violation of Title VII of the Civil Rights Act.

In Count One, Coleman alleges that Pepco committed "repeated acts of retaliation against Plaintiff."  (Cmpl. ¶ 54)  He claims that the IBEW "aided and abetted in the retaliation" and "collu[ded] with Pepco in committing acts of retaliation" and thereby violated Title VII.  (Cmpl. ¶¶ 54, 59)  Coleman's Title VII claim must be dismissed for either of two reasons:  First, Coleman did not file a charge of discrimination against the IBEW with the EEOC.  Second, Coleman's allegations do not state a claim against the IBEW for unlawful retaliation under Title VII.

## A.  Coleman did not File a Charge of Discrimination Against the IBEW.

Title VII of the Civil Rights Act provides that, after a charge of

---

[6]     It is well-established that international unions and their affiliated locals are separate legal entities.  *Carbon Fuel Co. v. Mine Workers,* 444 U.S. 212 (1979) (International union not liable for strike conducted by an affiliated local).

discrimination is filed with the EEOC, "a civil action may be brought against the respondent named in the charge." 42 U.S.C. § 2000e-5(f)(1). "As a general rule, a party not named in the EEOC charge may not be sued in a subsequent action under Title VII." *McManus v. Washington Gas Light Co.,* 1991 U.S. Dist. Lexis 14539 (D.D.C. Oct. 15, 1991) (Lamberth, J.). This rule insures that parties receive adequate notice and an opportunity to participate in conciliation before being named as Title VII defendants. *Id.*; *Berger v. Iron Workers Local 201*, 843 F.2d 1395, 1434 (D.C. Cir. 1988).

Under this rule, a plaintiff who has filed a charge only against a local union may not name its affiliated international as a defendant in a subsequent Title VII suit. In both *Johnson v. Palma*, 931 F.2d 203, 209-11 (2nd Cir. 1991) and *Stache v. Bricklayers*, 852 F.2d 1231, 1234 (9th Cir. 1988), the courts of appeals affirmed the dismissal of Title VII claims against international unions because the plaintiffs had named only the affiliated locals in charges filed with the EEOC. In each of those cases – as here – the local union, and not the international, was responsible for processing grievances on the plaintiff's behalf. 931 F.2d at 210.

The district court's decision in *Gallagher v. IBEW,* 127 F. Supp. 2d 139 (N.D.N.Y. 2000), is also instructive. In that case, an employee who, like Coleman, was represented by an IBEW local union filed a charge of age discrimination naming his local, but not the IBEW, as a respondent. The court held that the "Plaintiff's failure to name the International defendants in his administrative charge bars his ADEA claim against them." *Id.* at 144. In so holding, the court

rejected the argument that the interests of the IBEW and those of its affiliated local union were so identical that naming the IBEW was unnecessary. *Id.* at 143-44.

Coleman's charge was filed against Local 1900 and not against the IBEW. It listed and was sent to Local 1900's address. It included allegations only against what Coleman described as "the above named Union (Local 1900)" And, it was never served or provided to the IBEW, which therefore had no opportunity to respond or to participate in conciliation. Unlike Local 1900, the IBEW does not represent Pepco employees, is not a party to Pepco's collective bargaining agreement, and has no authority to file or process grievances against Pepco. The interests of the IBEW and Local 1900 are therefore not identical. Consequently, Coleman's failure to file an EEOC charge against the IBEW requires the dismissal of his Title VII claim here.

B.   <u>Coleman has Failed to State a Timely Claim Against the IBEW for Unlawful Retaliation under Title VII.</u>

Coleman's allegation – that the IBEW violated Title VII by colluding with, and aiding and abetting Pepco in retaliating against him – does not state a claim under Title VII. Title VII prohibits employers and unions from retaliating against employees for engaging in conduct protected by Title VII. 42 U.S.C. § 2000e-3(a). Title VII, however, does not contain any provision creating a cause of action against a union or employer that colludes with or aids and abets another in taking unlawful retaliatory action. *See Wallace v. Skadden, Arps, Slate, Meagher & Flom,* 715 A.2d 873, 889 (D.C. 1998) ("there is no provision in Title VII proscribing 'aiding or abetting'"). The allegation that the IBEW aided and abetted Pepco does not

therefore state a claim under Title VII.

The amended complaint, moreover, does not allege that, in the 300 days before he filed his charge of discrimination, the IBEW itself engaged in any unlawful retaliatory conduct.[7]  To establish unlawful retaliation, a plaintiff must show that he engaged in protected activity; that the employer or union "engaged in conduct having an adverse impact on the plaintiff;" and that a causal connection existed between the two.  *Berger v, Iron Workers Local 201*, 843 F.2d 1395, 1423 (D.C. Cir. 1988).  "In the absence of a finding that the plaintiff has suffered adverse action, a retaliation claim fails as a matter of law."  *Id.* at 1424.  An adverse employment action sufficient to constitute retaliation under Title VII must be one with "materially adverse consequences affecting the terms, conditions or privileges of employment."  *Stewart v. Evans*, 275 F.3d 1126, 1134 (D.C. Cir. 2002); *Brown v. Brody*, 199 F.3d 446, 457 (D.C. Cir. 1999).

Minor changes in work-related duties, disciplinary warnings and poor evaluations have all been deemed insufficient to constitute adverse employment action under Title VII.  *Stewart*, 275 F.3d at 1135; *Brown*, 199 F.3d at 458; *Walker v. Washington Metropolitan Area Transit Authority*, 102 F. Supp. 2d 24, 27 (D.D.C. 2000).  In *Rochon*, this Court held that an employer's failure to investigate, monitor and protect an employee who had been threatened did not constitute an adverse

---

[7]    In the District of Columbia, the statute of limitations for filing a charge of discrimination with the EEOC is 300 days.  42 U.S.C. § 2000e-5(c)(1).  Accordingly, any Title VII claim based on events that took place more than 300 days before the charge was filed would be time-barred.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002) (Title VII "precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period.").

employment action.  319 F. Supp. 2d at 31.

In this case, Coleman alleges that, in the 300 days before he filed his charge of discrimination on November 5, 2004, the IBEW failed to respond to his request for a meeting to discuss his grievances or to his expressions of concern about how his grievances had been handled.  (Cmpl. ¶¶ 45, 46, 47)  The failure to respond to those requests and inquiries did not materially affect Coleman's terms, conditions or privileges of employment – particularly since the IBEW had no authority under the collective bargaining agreement to take any action on his behalf – and therefore did not constitute adverse employment action by the IBEW.  Accordingly, the allegations in Coleman's amended complaint, even if true, could not establish that the IBEW had unlawfully retaliated against Coleman in violation of Title VII.  He has therefore failed to state a claim under Title VII, and his Title VII claim should be dismissed.

## II.    The Amended Complaint Fails to State a Claim Against the IBEW for a Violation of the D.C. Human Rights Act.

The D.C. Human Rights Act, unlike Title VII, does include a provision that prohibits persons from aiding or abetting others in committing acts otherwise prohibited by the DCHRA.  D.C. Code. Ann. 2-1402.62.  Coleman's amended complaint, however does not state a claim against the IBEW for a violation of that provision.  His claim under D.C. law is preempted by §301 of the LMRA, because it would require the Court to interpret a collective bargaining agreement.  Even if it is not deemed preempted, the claim should be dismissed, because the amended complaint does not contain any timely allegations against the IBEW that, if true,

would subject the IBEW to liability under the DCHRA.

A.    Coleman's Claim under the D.C. Human Rights Act is Preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. §185(a).

According to the amended complaint, the IBEW violated the D.C. Human Rights Act by, among other things, "fail[ing] to enforce provisions of the Contract Agreement between itself and Pepco as it related to the timely processing of grievances." (Cmpl. ¶¶ 13(c), 26)  Because the resolution of Coleman's claim under the DCHRA would require the Court to interpret the collective bargaining agreement, that claim is preempted by §301 of the Labor Management Relations Act.

Section 301 gives federal district courts jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization."  29 U.S.C. §185(a).  Suits that fall within the scope of §301 are completely preempted by federal law, even if the complaint does not on its face refer to §301 or any other federal law.  In such suits, federal law completely supplants state law, even if federal law is not invoked.  *Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 560 (1968).  "[A]ny claim purportedly based on that pre-empted state law is considered from its inception, a federal claim."  *Caterpillar, Inc, v. Williams,* 482 U.S. 386, 393 (1987).  As the Supreme Court explained, "the preemptive force of §301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.'  Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of §301."  *Franchise Tax Board v. Construction Laborers Vacation Trust*,

13

463 U.S. 1, 23-24 (1983).

Section 301 preemption is not limited to suits for breach of contract; suits alleging tortious conduct or violations of state statutory law may also be preempted. In *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985), for example, the Supreme Court held that §301 preempted a state tort action alleging a bad faith delay in making disability payments under a collective bargaining agreement. And, in IBEW *v. Hechler*, 481 U.S. 851 (1987), the Court held that §301 preempted the claim of an injured employee who alleged that the union had breached a duty to provide her with a safe workplace. As articulated by the Supreme Court, §301 completely preempts any state law claim that is "founded directly on rights created by collective bargaining agreements, and also claims 'substantially dependent on analysis of a collective bargaining agreement.'" *Caterpillar*, 482 U.S. at 394 (quoting *Hechler,* 481 U.S. at 859 n.3).

As this Court has explained, "State law based claims that depend on construction and application of terms of a collective bargaining agreement are preempted. Those that have a basis wholly independent of the labor contract are not." *Black v. NFL Players' Association,* 87 F. Supp. 2d 1, 4 (D.D.C. 2000) (claim that racially discriminatory conduct constituted tortuous interference with contract was preempted by §301 because it was not independent of the collective bargaining agreement); *accord Sokos v. Hilton Hotels Corp.*, 283 F. Supp. 2d 42 (D.D.C. 2003) (claims for wrongful discharge and tortious interference deemed preempted); *see Brown v. Gino Morena Enterprises*, 44 F. Supp. 2d 41, 44 (D.D.C. 1999) (When an

14

employee sues his employer for breach of contract and his union for breach of the duty of fair representation, "any pendent claims by such an employee are preempted by §301 if the application of state law requires the interpretation of a collective bargaining agreement.")

Claims under state anti-discrimination laws, such as the DCHRA, are preempted by §301 if resolution of those claims would require interpretation of a collective bargaining agreement. *Fant v. New England Power Service Co.*, 239 F.3d 8, 14-16 (1st Cir. 2001) (claim of handicap discrimination under Massachusetts omnibus discrimination law); *Reece v. Houston Lighting & Power Co.*, 79 F.3d 485 (5th Cir. 1996) (claim of race discrimination under Texas labor Code); *Jones v. Truck Drivers Local 299,* 838 F.2d 856, (6th Cir. 1988) ("plaintiffs' [sex discrimination] claim against the union for failure to represent fairly under the contract is preempted by federal law, which governs interpretation of the collective bargaining agreement.").

Coleman's DCHRA claim depends on the interpretation of a collective bargaining agreement.  He alleges that the collective bargaining agreement requires grievance meetings to be held within certain time periods (Cmpl. ¶ 26) and that the IBEW violated the DCHRA by, *inter alia,* "fail[ing] to enforce provisions of the Contract Agreement . . . as it related to the timely processing of grievances." (Cmpl. ¶ 13(c))  To decide the merits of that claim, the Court would have to review the grievance provisions of the collective bargaining agreement, determine what they do and do not require, whether they can or cannot be enforced by the IBEW,

and whether those provisions had been violated.  Because that claim would require the Court to interpret and apply the collective bargaining agreement, it is preempted by §301 of the LMRA.[8]

B.    Coleman has Failed to State a Timely Claim Against the IBEW for Aiding and Abetting Unlawful Retaliation under the D.C. Human Rights Act.

The D.C. Human Rights Act makes it unlawful "for any person to aid, abet, invite, compel, or coerce the doing of any of the acts forbidden under the provision of this chapter."  D.C. Code Ann. 2-1402.62.  In *Wallace*, the District of Columbia Court of Appeals observed that under this provision "[a]n aider or abetter is one who 'in some sort associates himself with the venture . . . participates in it as something he wishes to bring about , [and] seeks by his action to make it succeed." 715 A.2d at 888 (quoting *Roy v. United States,* 652 A.2d 1098, 1104 (D.C. 1995)).  A one-year stature of limitation applies to claims under the D.C. Human Rights Act. D.C. Code Ann. 2-1403.16(a); *Boulton v. Institute of International Education*, 808 A.2d 499, 503 n.2 (D.C. 2002).  Accordingly, to state a claim under the DCHRA for unlawfully aiding and abetting Pepco in retaliating against him, Coleman must allege that in the year before he filed his complaint, the IBEW engaged in conduct that satisfies the standard articulated in *Wallace*.  Examination of the amended complaint shows that he has not.

According to the amended complaint, Pepco's final act of retaliation against

---

[8]    In *Allis-Chalmers Corp.,* the Supreme Court held that when a state law claim is preempted by §301, it must either be dismissed or "treated as a §301 claim."  471 U.S. at 220.  Treating Coleman's DCHRA claim as a §301 claim would require its dismissal.  Since the IBEW is not a party to the collective bargaining agreement, its conduct could not have breached that agreement.

Coleman was his discharge in March 2004, which occurred more than a year before Coleman filed his complaint against the IBEW on June 3, 2005. It is difficult to conceive how anything that the IBEW may have done after June 3, 2004, four months after his discharge, would have aided and abetted Pepco in discharging Coleman, or in taking any other retaliatory action prior to his discharge.

The amended complaint does not answer that question. It alleges that in June 2004, the IBEW did not object when Pepco introduced testimony at an arbitration hearing that was inconsistent with testimony presented in a prior grievance meeting (Cmpl. ¶ 43) (which is hardly surprising, since the IBEW has no right to participate in arbitration hearings at Pepco). Coleman also alleges that in July and August 2004 and July 2005 the IBEW failed to respond to his correspondence, expressions of concern and request for an explanation about the prior handling of his grievances. (Cmpl. ¶¶ 45-47) Even if those allegations were correct, they would be inadequate to establish that the IBEW had somehow participated in Pepco's retaliatory conduct and sought to make it succeed. Stated simply, the IBEW which had no authority to take any action on Coleman's behalf, did not aid an abet Pepco by failing to object to testimony to which it had no right to object or by failing to respond to Coleman's correspondence or inquiries.

The amended complaint does not contain a timely allegation that the IBEW aided and abetted Pepco in retaliating against Coleman. The complaint therefore fails to state a claim against the IBEW for violating the D.C. Human Rights Act and should be dismissed.

17

### III.    The Amended Complaint Fails to State a Claim Against the IBEW for Breach of the Duty of Fair Representation.

In his amended complaint, Coleman claims that the IBEW breached the duty of fair representation by mishandling his grievances, failing to respond appropriately to his complaints of harassment and collaborating with Pepco. (Cmpl.¶ 61-63)  The amended complaint, however, does not state a claim against the IBEW for beach of the duty of fair representation, because, as Coleman acknowledges (Cmpl. ¶ 6), he was represented by Local 1900 and not by the IBEW. The IBEW therefore did not owe him a duty of fair representation.  Any fair representation claim would also be untimely.  With a single exception, all of the events alleged in the complaint took place more than six months before Coleman filed his initial complaint.  And, that single exception – a failure to respond to Coleman's "expressed concern" about prior union conduct (Cmpl. ¶ 47) – did not constitute a breach of the duty of fair representation.

A.    <u>The IBEW Did Not Owe Coleman a Duty of Fair Representation.</u>

Under the National Labor Relations Act, a union recognized by an employer as the representative of its employees has the exclusive right to represent those employees.  29 U.S.C. §159(a).  The Supreme Court has held that a union with the exclusive authority to represent employees owes a concomitant duty to represent those employees fairly.  *Vaca v. Sipes*, 386 U.S. 171, 177 (1967).  It is thus a union's status as the recognized collective bargaining representative that imposes the duty of fair representative.  *Wells v. Railway Conductors*, 442 F.2d 1176, 1179 (7th Cir.

1971) ("the duty of fair representation flows from the majority union's status as a statutorily recognized exclusive bargaining agent").

A union that does not have the authority to act as exclusive collective bargaining representative does not owe a duty of fair representation. As the court of appeals explained in *Kuhn v. Letter Carriers*, 528 F.2d 767 (8th Cir. 1976), "Such exclusive representation is a necessary prerequisite to a statutory duty to represent fairly." *Id.* at 770.

In this case, as the complaint and the collective bargaining agreement show, Local 1900, and not the IBEW, is the sole recognized bargaining representative of Pepco's employees. (Cmpl. ¶ 6; Declaration of John Coleman, Ex. B at § 2.01) Where, as here, a local union is the sole representative of bargaining unit employees, its parent international union owes those employees no duty of fair representation. As a result, as one court recently observed in a case involving the IBEW and one of its affiliated local unions, "international unions are routinely dismissed from duty of fair representation suits when they are neither the recognized collective bargaining representative nor a party to the agreement." *Carr v. Local 1593, IBEW*, 371 F. Supp. 2d 1097, 1103 (D. N.D. 2005) (quoting *Borg v. Greyhound Lines, Inc.,* 1984 U.S. Dist. Lexis 24852 at 3 (N.D. Cal. July 17, 1984)).

In *Baker v. Newspaper and Graphic Communications Union,* 628 F.2d 156 (D.C. Cir. 1980), an employee represented by a local union sued both his local and international unions for beach of the duty of fair representation. The D.C. Circuit dismissed a fair representation claim against the international because it "was

19

neither the bargaining representative nor a party to the collective bargaining agreement." *Id.* at 165. In similar circumstances, several other courts have also dismissed fair representation claims against international unions. *Tongay v. The Kroger Co.*, 860 F.2d 298, 299-300 (8th Cir. 1988); *Sine v. Teamsters Local 992,* 730 F.2d 964, 966 (4th Cir. 1984) ("Where as here, the local is designated as the exclusive bargaining agent . . . only the local can be held responsible."); *Hall v. Printing and Graphic Arts Union*, 696 F.2d 494, 499-500 (7th Cir. 1982); *Sinyard v. Foote & Davies Div.*, 577 F.2d 943, 947-48 (5th Cir. 1978); *Carr*, 371 F. Supp. 2d at 103-04 ("numerous federal courts have dismissed fair representation actions against international unions"); *Walters v. Roadway Express, Inc.*, 400 F. Supp. 6, 14, 16 (S.D. Miss. 1975), *aff'd,* 577 F.2d 521 (5th Cir. 1977) ("Where the International is not the exclusive collective bargaining representative of the plaintiffs, there is no duty of fair representation."). Accordingly, because the IBEW is not Coleman's recognized collective bargaining representative, it does not owe him a duty of fair representation. Coleman cannot therefore state a claim against the IBEW for breach of the duty of fair representation.[9]

---

[9]    If the court declines to dismiss Coleman's fair representation claim on this basis – that the IBEW does not owe him a duty of fair representation – then the Court must deem his claim under the D.C. Human Rights Act preempted by the federal duty of fair representation.

Federal courts have uniformly held that any claim, purportedly based on state law, asserting that a union has failed to fulfill an obligation owed, as a representative, to an employee that it represents is preempted by the federal duty of fair representation. *Thomas v. Letter Carriers*, 225 F.3d 1149, 1158 (10th Cir. 2000) (state wrongful discharge and civil conspiracy claims preempted by duty of fair representation); *BIW Deceived v. Local S6, Marine and Shipbuilding Workers*,

B.    Coleman's Fair Representation Claim is Time-Barred.

Even if the IBEW owed Coleman a duty of fair representation, his claim would have to be dismissed. Such claims are governed by a six-month statute of limitations. *DelCostello v. Teamsters*, 462 U.S. 151, 172 (1983); *Adkins v. Safeway Stores*, 1991 U.S. Dist. Lexis 12616 at 6-7 (D.D.C. June 21, 1991) (Lamberth, J.). A fair representation claim based on events that transpired more than six months before the complaint was filed would be untimely.

Coleman filed his initial complaint on June 3, 2005. Any fair representation claim based on events that transpired before December 3, 2004 would therefore be time-barred. The complaint shows that – with one exception – all of the events on

---

132 F.3d 824, 831 (1st Cir. 1997) ("federal law completely governs the duties owed by an exclusive collective bargaining representative to those within the bargaining unit."); *Welch v. General Motors Corp.,* 922 F.2d 287, 293-94 (6th Cir. 1990); *Richardson v. Steelworkers*, 864 F.2d 1162, 1169 (5th Cir. 1989) ("federal law . . . entirely govern[s] the duties which an NLRA collective bargaining representative owes, by virtue of its position as such, to the workers it represents in that capacity"); *Johnson v. Food and Commercial Workers*, 828 F.2d 961, 967 (3rd Cir. 1987); *Peterson v. Air Line Pilots*, 759 F.2d 1161, 1168-71 (4th Cir. 1985); *Condon v. Local 2944, Steelworkers*, 683 F.2d 590, 594-95 (1st Cir. 1982).

A union breaches its duty of fair representation by treating a union-represented employee in a discriminatory manner. *Vaca*, 386 U.S. at 190. Accordingly, courts have consistently held that the duty of fair representation preempts an employee's claim that his union representative violated state anti-discrimination law by treating him or her in a discriminatory manner. *Welch*, 922 F.2d at 293-94 (handicap discrimination claim under Michigan law); *Maynard v. Revere Copper Products*, 773 F.2d 733, 735 (6th Cir. 1985) (same); *Madison v. Set Painters Local 729,* 132 F. Supp. 2d 1244, 1256-60 (C.D. Cal. 2000) (race discrimination claim under California law); *Rodolico v. Unisys Corp.*, 96 F. Supp. 2d 184, 187-89 (E.D.N.Y. 2000) (age discrimination claim under New York law); *Snay v. U.S. Postal Service*, 31 F. Supp. 2d 92, 99-100 (N.D.N.Y. 1998) (disability and sex discrimination claim New York law); *Wilhelm v. Sunrise Northeast, Inc.*, 923 F. Supp. 330, 336-37 (D. Conn. 1995) (discrimination claim based on sexual orientation under Connecticut law).

which Coleman's bases his claim took place before December 3, 2004. (Cmpl. ¶¶ 14-46)  To the extent that his fair representation claim is based on those events, it is untimely.  Under Rule 12(b)(6), an untimely claim may be dismissed if, and only if, the complaint shows on its face that the claim is time-barred.  *Doe v. United States Department of Justice*, 753 F.2d 1092, 1115 (D.C. Cir. 1985).  Since the amended complaint in this case shows that Coleman's fair representation claim is untimely, it should be dismissed.

The single averment that would not be untimely is Coleman's allegation that in July 2005, after he filed this lawsuit, he expressed concern to, and requested an explanation from, the IBEW about its failure to respond to his previously-expressed concerns, but that the IBEW refused to respond.  (Cmpl. ¶ 47)  That allegation, even if true, would not constitute a breach of the duty of fair representation.

As the Supreme Court held in *Vaca v. Sipes*, a breach of the duty of fair representation occurs "only when a union's conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith."  386 U.S. at 190.  The Court has also stated that "a wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents."  *Ford Motor Co. v. Huffman,* 345 U.S. 330, 338 (1953).  The duty does not impose an obligation on unions to respond to specific inquiries from individual employees.  In *Hammons v. Adams*, 783 F.2d 597, 605 (5th Cir. 1986), for example, the court of appeals rejected the plaintiffs' argument that the duty required their international union to respond to correspondence about their grievances and their treatment by the local

union.  In *Whitten v. Anchor Motor Freight, Inc.*, 521 F.2d 1335, 1341 (6th Cir. 1975), the court of appeals held that evidence, showing that the union had not answered the plaintiff's letters asking about the status of his grievance, was not sufficient to establish that the union had breached its duty of fair representation.   And, in *Caputo v. Letter Carriers*, 730 F. Supp. 1221, 1230 (E.D.N.Y. 1990), the district court held that "as a matter of law, the failure to keep a grievant informed of the status of the grievance is not a breach of the duty of fair representation."  A union's mere failure to respond to an inquiry is, as a matter of law, insufficient to show that the union has breached the duty of fair representation.  Coleman's allegation that the IBEW did not respond to his expression of concern and request for an explanation does not therefore state a claim for breach of the duty of fair representation.

### IV.  The Amended Complaint Fails to State a Claim Against the IBEW for Intentional Infliction of Emotional Distress.

In Count Three of the amended complaint, Coleman alleges that, by taking retaliatory action and harassing him, Pepco intentionally inflicted emotional distress.  He also alleges that "Defendant aided and abetted Pepco and worked in collusion with it in committing these acts."  (Cmpl. ¶ 65)  The amended complaint does not, however, state a claim against the IBEW for intentional infliction of emotional distress.  Like his claim under the DCHRA, Coleman's claim for infliction of emotional distress would require the Court to interpret and apply a collective bargaining agreement and is therefore preempted by §301 of the LMRA.  Even if D.C. law were to be applied, however, the claim would have to be dismissed.

Coleman has not alleged that Pepco engaged in any conduct that could be characterized as outrageous within the meaning of D.C. law and has not alleged that the IBEW took any actions that could render it liable under D.C. law as one who aids an abets another tortfeasor.  The claim therefore fails as a matter of law.

A.    Coleman's Claim for Intentional Infliction of Emotional Distress is Preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. §185(a).

Like his claim under the DCHRA, Coleman's claim for intentional infliction of emotional distress would require the Court to interpret the collective bargaining agreement between Pepco and Local 1900.  According to Coleman, Pepco harassed him by, among other things, imposing unwarranted discipline and repeatedly denying him family medical leave, and the IBEW aided and abetted Pepco by, among other things, refusing to enforce the grievance procedure in Article 17 of the collective bargaining agreement.  (Cmpl. ¶¶ 24, 26)  The collective bargaining agreement between Pepco and Local 1900 sets out the circumstances under which Pepco can discipline employees, what employees must do to obtain family medical leave, and how the grievance procedure should be conducted.  (Declaration of John Coleman, Ex. B at §§ 16.01, 14.06, Art 17)  Accordingly, to determine whether Pepco wrongfully inflicted emotional distress and whether the IBEW aided or abetted Pepco as Coleman alleges, the Court would be required to interpret and apply those provisions – to determine whether discipline was wrongly imposed, whether leave was wrongly denied and whether the parties complied with the contractual grievance procedure.  *See Douglas v. American Information Technologies Corp.*, 877

F.2d 565, 571 (7th Cir. 1989) ("an actor will not be held liable for the intentional infliction of emotional distress 'where he has done no more than insist upon his legal rights in a permissible way.'") (quoting Restatement (Second) of Torts §46, comment g).

It is well-established that §301 of the LMRA preempts any tort claim that would require the Court to interpret a collective bargaining agreement. *Supra* at 13-16. Claims for infliction of emotional distress that would require interpretation of a collective bargaining agreement are therefore preempted. *Mattis v. Massman,* 355 F.3d 902, 907-08 (6th Cir. 2004) ("determining whether Massman's alleged harassment constituted 'outrageous conduct' would force us to look to the CBA"); *Douglas*, 877 at 568-73; *Newberry v. Pacific Racing Association*, 854 F.2d 1142, (9th Cir 1988). Because Coleman's claim for infliction of emotional distress would require the Court to interpret a collective bargaining agreement, it is preempted and must be dismissed.

B.    Coleman has Failed to State a Claim Against the IBEW for Aiding and Abetting Pepco's Intentional Infliction of Emotional Distress.

The amended complaint alleges that Pepco intentionally inflicted emotional distress and that the IBEW aided and abetted Pepco. If Pepco's alleged conduct did not constitute tortious infliction of emotional distress, then the claim against the IBEW must be dismissed, since one cannot be liable for aiding and abetting conduct that is not itself tortious or unlawful. *See Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983) (civil liability for aiding and abetting requires a wrongful act by the party aided) ; *Ungar v. The Islamic Republic of Iran*, 211 F. Supp. 2d 91, 99 (D.D.C.

2002).

A party is liable for intentional infliction of emotional distress only if it engages in extreme or outrageous conduct that intentionally or recklessly causes severe emotional distress to another. *Joyner v. Sibley Memorial Hospital*, 826 A.2d 362, 373 (D.C. 2003); *Kerrigan v. Britches of Georgetowne, Inc.,* 705 A.2d 624, 628 (D.C. 1997). "[T]he plaintiff must allege conduct 'so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'" *Id.* (quoting Restatement (Second) of Torts § 46, comment d).

The D.C. Court of Appeals has emphasized its reluctance to characterize as extreme and outrageous conduct that occurs in the context of an employment relationship. *Joyner,* 826 A.2d at 373; *Kerrigan*, 705 A.2d at 628. Mere discharge of an employee without good cause does not constitute outrageous conduct. *Crowley v. North American Telecommunications Association*, 691 A.2d 1169, 1171-72 (D.C. 1997). In *Joyner,* the D.C. Court of Appeals held that the plaintiff has not alleged sufficiently outrageous conduct by averring that her employer had intentionally closed a door on her hand to prevent her from leaving a meeting. 826 A.2d at 373. In *Kerrigan*, the court held that the plaintiff had not alleged sufficiently outrageous conduct by claiming that his employer had targeted him for an investigation, manufactured evidence against him, leaked information about him to other employees, and demoted him without cause. 705 A.2d at 628. *See Hoffman v. Hill and Knowlton, Inc.,* 777 F. Supp. 1003, 1005 (D.D.C. 1991) (employee discharged

26

after employer forced him to work in demeaning circumstances and made false accusations knowing that they would be communicated to co-workers and prospective employers); *Elliott v. Healthcare Corp.*, 629 A.2d 6, 9 (D.C. 1993) (discharge without good cause); *Smith v. Union Labor Life Insurance Co.*, 620 A.2d 265, 270 (D.C. 1993) (dismissal without prior disciplinary procedures); *Adams v. George W. Cochran & Co.*, 597 A.2d 28, 35 (D.C. 1991) (truck driver discharged for refusing to violate law by driving a truck without an inspection sticker). *Compare Howard University v. Best*, 484 A.2d 958, 985-86 (D.C. 1984) (repeated physical and verbal harassment of female employee by her supervisor could constitute outrageous conduct)

Pepco's conduct, as it is alleged in the amended complaint, is not significantly different from the conduct of other employers deemed insufficiently outrageous in these cases. Essentially, Coleman alleges that Pepco made false accusations, took personal items that belonged to him, imposed unwarranted discipline and discharged him without cause. (Cmpl. ¶ 24) Such conduct is essentially the same as that alleged in *Kerrigan* and others in which former employees allege mistreatment by their employers culminating in discharge. Such conduct has consistently been deemed insufficient to state a claim for intentional infliction of emotional distress.

Even if Coleman had alleged that Pepco had engaged in outrageous conduct, his claim would still fail as a matter of law. As the D.C. Circuit explained in *Halberstam*, a party may be civilly liable for aiding and abetting another's wrongful

conduct only if it "knowingly and substantially assist[ed] the principal violation." 705 F.2d at 477. In *Ungar,* this Court held that the government of Iran was not civilly liable for aiding and abetting a murder committed by members of the terrorist organization HAMAS, despite the fact that Iran had provided HAMAS with funds, weapons and training. The court concluded that, by providing those resources, Iran had not provided knowing and substantial assistance in the murder itself. 211 F. Supp. 2d at 99.

In this case, Coleman has not alleged any facts that, if true, would show knowing and substantial assistance from the IBEW to Pepco in the alleged retaliation and harassment. Coleman does not allege that the IBEW played any role whatsoever in his discharge, discipline or any other retaliatory actions that Pepco is alleged to have taken. The amended complaint alleges only that in one instance the IBEW did not enforce the time limits imposed by the contractual grievance procedure (time limits that, as the agreement shows, the IBEW had no authority to enforce); that at an arbitration hearing after his discharge, the IBEW did not object when Pepco offered testimony inconsistent with its prior statements (testimony to which the IBEW had not right to object); and that the IBEW did not respond to his expressions of concern and inquiries about his grievances. (Cmpl. ¶¶ 26, 43, 45-47) Those allegations, even if true, would not show that the IBEW had provided knowing and substantial assistance to Pepco in harassing Coleman or retaliating against him. His claim against the IBEW for aiding and abetting Pepco therefore must be dismissed.

28

<u>CONCLUSION</u>

For all the foregoing reasons, the Court should grant the IBEW's motion and should dismiss Coleman's amended complaint.

Respectfully submitted,

 /s/ Robert D. Kurnick
Robert D. Kurnick, D.C. Bar No. 243683
Sherman, Dunn, Cohen, Leifer & Yellig, P.C.
900 Seventh Street, N.W., Suit 1000
Washington, D.C. 20001
(202) 785-9300

Attorney for Defendant International
Brotherhood of Electrical Workers

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this eleventh day of January 2006, I have mailed a copy of the foregoing motion to dismiss, memorandum of points and authorities in support of that motion, proposed order, declaration of John Coleman and declaration of Lawrence Neidig, Jr. to:

Elliotte Patrick Coleman
2730 Knox terrace, S.E.
Washington, D.C. 20020


    /s/ Robert D. Kurnick_____
    Robert D. Kurnick

30