## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ELLIOTTE PARTICK COLEMAN,  )
                              )
          Plaintiff,     )
                              )
          v.        )
                              )   Case No. 1:05-CV-1206 (RCL)
LOCAL UNION 1900 OF THE   )
INTERNATIONAL BROTHERHOOD  )
OF ELECTRICAL WORKERS,   )
                              )
          Defendant.   )
_____)

## MEMORANDUM OF POINTS AND AUTHORITIES IN
## SUPPORT OF LOCAL UNION 1900 OF THE INTERNATIONAL
## BROTHERHOOD OF ELECTRICAL WORKERS' MOTION TO DISMISS

Robert D. Kurnick, D.C. Bar No. 243683
Sherman, Dunn, Cohen, Leifer & Yellig, P.C.
900 Seventh Street, N.W., Suit 1000
Washington, D.C. 20001
(202) 785-9300

Attorney for Defendant Local
Union 1900 of the International
Brotherhood of Electrical Workers

# TABLE OF CONTENTS

TABLE OF AUTHORTIES ................................................................................iii

INTRODUCTION ........................................................................................ 1

STATEMENT OF THE CASE ...................................................................... 3

STATEMENT OF ALLEGED FACTS........................................................... 3

ARGUMENT ............................................................................................... 6

    I.  The Second Amended Complaint Fails to State a Claim Under Title VII of the Civil Rights Act. ............................................... 6

    II.  The Second Amended Complaint Fails to State a Claim Under the D.C. Human Rights Act. ................................................. 10

        A.  Coleman's Claim under the D.C. Human Rights Act is Preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. §185(a) ................................................ .10

        B.  Coleman's Claim under the D.C. Human Rights Act is Preempted by the Federal Duty of Fair Representation ......... .13

        C.  Coleman has Failed to State a Timely Claim Against Local 1900 for Aiding and Abetting Unlawful Retaliation under the D.C. Human Rights Act.............................................. .17

    III.  The Second Amended Complaint Fails to State a Claim for Breach of the Duty of Fair Representation.................................... 21

    IV.  The Second Amended Complaint Fails to State a Claim for Intentional Infliction of Emotional Distress .................................. 24

        A.  Coleman's Claim for Intentional Infliction of Emotion Distress is Preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. §185(a) ........................ .24

        B.  Coleman's Claim for Intentional Infliction of Emotional Distress is Preempted by the Federal Duty of Fair Representation............................................................................. .25

C. Coleman has Failed to State a Claim for Aiding and Abetting Pepco's Intentional Infliction of Emotional Distress .................................................................................. 26

CONCLUSION ...................................................................................... 29

# TABLE OF AUTHORITIES

## CASES

*ACLU Foundation of Southern California v. Barr*, 952 F.2d 457 (D.C. Cir. 1991)..................................................................................... 6

*Adams v. George W. Cochran & Co.*, 597 A.2d 28 (D.C. 1991) ....................... 27

*Adkins v. Safeway Stores*, 1991 U.S. Dist. LEXIS 12616 (D.D.C. June 21, 1991)............................................................................................... 22

*Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202 (1985)...................................... 11

*Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557 (1968).................................. 11

*BIW Deceived v. Local S6, Marine and Shipbuilding Workers*, 132 F.3d 824 (1st Cir. 1997) ....................................................................... 15

*Black v. NFL Players' Association*, 87 F. Supp. 2d 1 (D.D.C. 2000) .............. 12

*Boulton v. Institute of International Education*, 808 A.2d 499 (D.C. 2002)................................................................................................ 17

*Brieninger v. Sheet Metal Workers Local 6*, 493 U.S. 67 (1989)..................... 14

*Brown v. Gino Morena Enterprises*, 44 F. Supp. 2d 41 (D.D.C. 1999) ........... 12

*Burlington Northern and Santa Fe Railway v. White*, 126 S. Ct. 2405, 2006 U.S. LEXIS 4895 (June 22 2006) ................................................. 7, 8, 9

*Cahoon v. IBEW Local 261*, 175 F. Supp. 2d 220 ........................................... 16

*Caputo v. Letter Carriers*, 730 F. Supp. 1221 (E.D.N.Y. 1990) ...................... 23

*Caterpillar, Inc, v. Williams*, 482 U.S. 386 (1987).................................... 11, 12

*Coleman v. Pepco*, 281 F. Supp. 2d 250 (D.D.C. 2003) ..................................... 1

*Coleman v. Pepco*, 310 F. Supp. 2d 154 (D.D.C. 2004) ..................................... 1

*Coleman v. Pepco*, 422 F. Supp. 2d 209 (D.D.C. 2006) ................................ 1, 27

*Condon v. Local 2944, Steelworkers*, 683 F.2d 590 (1st Cir. 1982) ................ 16

*Crowley v. North American Telecommunications Association*, 691 A.2d 1169 (D.C. 1997) ............................................................................ 27

*Curran v. Oil, Chemical & Atomic Workers*, 582 F. Supp. 420 (N.D.N.Y. 1984) ....................................................................................... 16

*DelCostello v. Teamsters*, 462 U.S. 151 (1983) ................................................ 22

*Doe v. United States Department of Justice*, 753 F.2d 1092 (D.C. Cir. 1985) ..................................................................................................... 22

*Douglas v. American Information Technologies Corp.*, 877 F.2d 565 (7th Cir. 1989) ....................................................................................... 25

*Elliott v. Healthcare Corp.*, 629 A.2d 6 (D.C. 1993) ........................................ 27

*Fant v. New England Power Service Co.*, 239 F.3d 8 (1st Cir. 2001) .............. 12

*Fernandez-Montes v. Allied Pilots Association*, 987 F.2d 278 (5th Cir. 1993) ..................................................................................................... 3

*Ford Motor Co. v. Huffman*, 345 U.S. 330 (1953) ........................................... 23

*Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1 (1983) ................................................................................... 11

*Gipson v. Wells Fargo Corp.*, 382 F. Supp. 2d 116 (D.D.C. 2005) ................... 19

*Globig v. Johns-Manville Sales Co.*, 486 F. Supp. 735 (E.D. Wis. 1980) ........ 16

*Grigsby v. Johnson*, 1996 U.S. Dist. LEXIS 7034 (D.D.C. May 13, 1996) ...... 19

*Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983) ................................. 26, 28

*Hammons v. Adams*, 783 F.2d 597 (5th Cir. 1986) .......................................... 23

*Hishon v. King & Spalding*, 467 U.S. 69 (1984) ............................................... 6

*Hoffman v. Hill and Knowlton, Inc.*, 777 F. Supp. 1003 (D.D.C. 1991) .......... 27

*IBEW v. Hechler*, 481 U.S. 851 (1987) ............................................................. 11

*Johnson v. Food and Commercial Workers*, 828 F.2d 961 (3rd Cir. 1987) ................................................................................ 15

*Jones v. Truck Drivers Local 299*, 838 F.2d 856 (6th Cir. 1988) .................... 13

*Joyner v. Sibley Memorial Hospital*, 826 A.2d 362 (D.C. 2003) ...................... 27

*Kerrigan v. Britches of Georgetowne, Inc.*, 705 A.2d 624 (D.C. 1997) ............. 27

*Madison v. Set Painters Local 729*, 132 F. Supp. 2d 1244 (C.D. Cal. 2000) ................................................................................. 16

*Mattis v. Massman*, 355 F.3d 902 (6th Cir. 2004) .......................................... 25

*Maynard v. Revere Copper Products, Inc.*, 773 F.2d 733 (6th Cir. 1985).. 15, 16

*National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) ...................... 7

*Neitzke v. Williams*, 490 U.S. 319 (1989) ......................................................... 6

*Newberry v. Pacific Racing Association*, 854 F.2d 1142 (9th Cir 1988) .......... 25

*Oxford Asset Management, Ltd. v. Jaharis*, 297 F.3d 1182 (11th Cir. 2002) .................................................................................. 3

*Papasan v. Allain*, 478 U.S. 265 (1986) ........................................................... 3

*Peterson v. Air Line Pilots*, 759 F.2d 1161 (4th Cir. 1985) ............................. 15

*Price v. Crestar Securities Corp.*, 44 F. Supp. 2d 351 (D.D.C. 1999) ................ 6

*Reece v. Houston  Lighting & Power Co.*, 79 F.3d 485 (5th Cir. 1996) ........... 12

*Reiss v. Railway and Airline Clerks*, 629 F. Supp. 1029 (E.D. Pa. 1986) ....... 16

*Rendall-Speranza v. Nassim*, 107 F.3d 913 (D.C. Cir. 1997) ................... 19, 20

*Richardson v. Steelworkers*, 864 F.2d 1162 (5th Cir. 1989) ........................... 15

*Rochon v. Gonzales*, 438 F.3d 1211 (D.C. Cir. 2006) ..................................... 8, 9

*Rodolico v. Unisys Corp.*, 96 F. Supp. 2d 184 (E.D.N.Y. 2000) ...................... 17

*Rodolico v. Unisys Corp.*, 189 F.R.D. 245 (E.D.N.Y. 1999) ............................... 7

*Smith v. Union Labor Life Insurance Co.*, 620 A.2d 265 (D.C. 1993) ............ 27

*Snay v. U.S. Postal Service*, 31 F. Supp. 2d 92 (N.D.N.Y. 1998).................... 17

*Sokos v. Hilton Hotels Corp.*, 283 F. Supp. 2d 42 (D.D.C. 2003) .................... 12

*Sparshott v. Feld Entertainment, Inc.*, 89 F. Supp. 2d 1 (D.D.C. 2000)......... 20

*Square D Co. v. Niagara Frontier Tariff Bureau*, 476 U.S. 409 (1986) ........... 3

*Thomas v. Letter Carriers*, 225 F.3d 1149 (10th Cir. 2000)............................ 15

*Ungar v. The Islamic Republic of Iran*, 211 F. Supp. 2d 91 (D.D.C. 2002).................................................................................................. 27, 28

*Vaca v. Sipes*, 386 U.S. 171 (1967) ................................................ 14, 15, 16, 23

*Wallace v. Skadden, Arps, Slate, Meagher & Flom*, 715 A.2d 873 (D.C. 1998).................................................................................................. 7, 17

*Welch v. General Motors Corp.*, 922 F.2d 287 (6th Cir. 1990) ........................ 16

*Whitten v. Anchor Motor Freight, Inc.*, 521 F.2d 1335 (6th Cir. 1975) ........... 23

*Wilhelm v. Sunrise Northeast, Inc.*, 923 F. Supp. 330 (D. Conn. 1995) .......... 17

*Wood v. Chao*, 275 F.3d 107 (D.C. Cir. 2001)..................................................... 3

## STATUTES

29 U.S.C. § 159(a)............................................................................................... 14

29 U.S.C. §185(a)................................................................................................ 11

42 U.S.C. § 2000e-3(a).......................................................................................... 7

42 U.S.C. § 2000e-5(c)(1)...................................................................................... 7

D.C. Code Ann. 2-1402.62............................................................................. 10, 17

D.C. Code Ann. 2-1403.16(a) ............................................................................. 17

## MEMORANDUM OF POINTS AND AUTHORITIES IN
## SUPPORT OF LOCAL UNION 1900 OF THE INTERNATIONAL
## BROTHERHOOD OF ELECTRICAL WORKERS' MOTION TO DISMISS

### INTRODUCTION

The second amended complaint filed in this case ("Cmpl") – which substituted Local Union 1900 of the International Brotherhood of Electrical Workers ("Local 1900") for the International Brotherhood of Electrical Workers ("IBEW") as a defendant – constitutes the latest chapter in the litigation spawned by Elliotte Coleman's employment with the Potomac Electric Power Company ("Pepco"). His three previous suits against Pepco and the claims that he initially filed in this case against the IBEW have all been dismissed. Memorandum and Order, June 2, 2006; *Coleman v. Pepco*, 422 F. Supp. 2d 209, (D.D.C. 2006); *Coleman v. Pepco*, 310 F. Supp. 2d 154 (D.D.C. 2004) *Coleman v. Pepco,* 281 F. Supp. 2d 250 (D.D.C. 2003). The gravamen of his claim in this case is that, in processing the several grievances that it filed on his behalf, Local 1900 aided and abetted Pepco's unlawful retaliatory action against him – a claim that he makes despite the fact that his claim against Pepco for unlawful retaliation has now been dismissed.

The second amended complaint in this case includes three counts. The first alleges that Local 1900 violated Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et. seq.*, and the D.C. Human Rights Act ("DCHRA"), D.C. Code Ann. § 2-1401.01 *et seq.*, by aiding and abetting Pepco in retaliating against Elliotte Coleman ("Coleman") for activity protected by those statutes. (Cmpl. ¶¶ 52-60) The complaint, however, does not state a claim under Title VII because Title VII does

not provide a cause of action for aiding and abetting and because the complaint does not allege that, in the three hundred days before he filed his charge with the EEOC, Local 1900 took any action against Coleman that could accurately be characterized as materially adverse to a reasonable employee.

Coleman's claim under the DCHRA must also be dismissed. That claim is preempted by both §301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a) and the federal duty of fair representation. The claim is preempted by §301 because it would require the Court to interpret a collective bargaining agreement, and it is preempted by the federal duty of fair representation because it challenges the conduct of a union acting as his representative, a subject governed exclusively by federal law. Coleman has also failed to allege any conduct by Local 1900 that could be the basis of a timely aiding or abetting claim under the DCHRA.

The second count alleges that Local 1900 breached a duty of fair representation by failing to process Coleman's grievances or take appropriate action in response to his complaints of harassment. (Cmpl. ¶¶ 61-63) That claim is time-barred, because with perhaps one exception, all of the conduct alleged took place more than six months before Coleman filed his initial complaint, and that one exception does not constitute a breach of the duty of fair representation.

The third count alleges that Local 1900 aided and abetted Pepco's intentional infliction of emotional distress. (Cmpl. ¶¶ 64-67) Like his claim for violation of the DCHRA, that state law claim is preempted by §301 of the LMRA and by the duty of fair representation. Coleman, moreover, has failed to state a claim under applicable

D.C. law, because he has not alleged that Pepco engaged in conduct that could be characterized as outrageous or alleged any facts supporting his claim that Local 1900 aided and abetted Pepco's allegedly tortious conduct.

## STATEMENT OF THE CASE

Coleman submitted his initial complaint to the Court on June 3, 2005. That complaint, which named only the IBEW as a defendant, was filed on June 20, 2005. Coleman filed an amended complaint in December 2005. In response to the IBEW's motion to dismiss, Coleman, on February 2, 2006, sought leave to file a second amended complaint, substituting Local 1900 for the IBEW. (Plaintiff's Request for Leave to Amend, Feb. 2, 2006) On June 2, 2006, the Court dismissed with prejudice all claims against the IBEW and granted Coleman's request to file his second amended complaint. (Memorandum and Order, June 2, 2006)

## STATEMENT OF ALLEGED FACTS

In ruling on a motion to dismiss, a court should accept as true all facts alleged in the complaint. *Square D Co. v. Niagara Frontier Tariff Bureau*, 476 U.S. 409, 411 (1986); *Wood v. Chao*, 275 F.3d 107, 108 n.2 (D.C. Cir. 2001). Conclusory allegations and conclusions of law, however, should not be accepted. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "[C]onclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Management, Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002); *Fernandez-Montes v. Allied Pilots Association*, 987 F.2d 278, 284 (5th Cir. 1993).

The second amended complaint alleges that, until March 2004, Coleman was

a customer service representative employed by Pepco and represented in collective bargaining by Local 1900. (Cmpl. ¶¶ 5-7) In May 2000, Coleman filed a charge of discrimination against Pepco with the Equal Employment Opportunity Commission. (Cmpl. ¶ 14) Pepco allegedly retaliated against Coleman by placing him on "decision-making leave" (a form of suspension) in February 2001. (Cmpl. ¶ 15) Local 1900 filed a grievance on Coleman's behalf challenging his discipline, but officials of Local 1900 allegedly instructed shop stewards not to discuss those grievances with Coleman. (Cmpl. ¶¶ 15-21)

Pepco terminated Coleman in January 2002. (Cmpl. ¶ 22) Local 1900 grieved Coleman's discharge, processed that grievance to arbitration and prevailed on his behalf. (Cmpl. ¶ 24) Pepco reinstated Coleman but, according to the complaint, then harassed him by, *inter alia*, issuing a written reminder for violating its attendance policy, placing him on decision making leave and denying him family medical leave. (Cmpl. ¶ 24)

In March 2003, when Coleman failed to report to work on a day that Pepco claimed he was scheduled to work, Pepco issued a written reminder to Coleman, prompting Local 1900 to file another grievance on his behalf challenging that action. (Cmpl. ¶ 26) With Coleman in attendance, Pepco and Local 1900 conducted a step-two grievance meeting, in December 2003, on two grievances: the grievance over the written reminder and another grievance that Local 1900 had filed when Pepco again placed Coleman on decision-making leave. (Cmpl. ¶ 28)

In March 2004, after an incident in which Coleman allegedly attended a

4

meeting without prior permission and without notifying his supervisor, Pepco suspended Coleman and then terminated his employment. (Cmpl. 31-33) Local 1900 told Coleman that it would file a grievance over his termination and submit that and other pending grievances to arbitration in an effort to restore his employment. (Cmpl. ¶ 34)

Local 1900 scheduled the arbitration over Coleman's written reminder for June 29, 2004. (Cmpl. ¶ 40) Officials of Local 1900 met with Coleman twice to prepare for that hearing. (Cmpl. 41-42) Tiajuana Barnes, a union steward who had attended the step-two meeting six months earlier and who had participated in the preparation for the arbitration hearing, could not recall certain statements made by Ms. Brisco, a Pepco supervisor, at that earlier step-two meeting. "As a result, Plaintiff had no witness to substantiate that Briscoe's testimony was a reversal of statements she had made during the December 2 meeting." (Cmpl. ¶ 42-43) In July 2004, the arbitrator issued a decision denying the grievance. (Cmpl. ¶ 44)

Later in July 2004, Coleman allegedly "forwarded Defendant correspondence" expressing concern for its "repeated mishandling of minutes and notes" and its "refusal to be forthcoming with its recollections of statements made by Pepco during meetings." (Cmpl. ¶ 45) In August 2004, Coleman asked to meet with Local 1900 regarding two pending grievances. According to the complaint, Local 1900 did not respond to his correspondence and refused to meet with him. (Cmpl. ¶¶ 45, 46)

In July 2005, Local 1900 contacted Coleman to inform him that it was attempting to schedule an arbitration hearing for late July. Coleman expressed

5

concern that the defendant had not responded to his prior expressions of concern. "Again Defendant refused to respond." (Cmpl. ¶ 47)

ARGUMENT

A Rule 12(b)(6) motion to dismiss "tests the legal sufficiency of the complaint." *ACLU Foundation of Southern California v. Barr*, 952 F.2d 457, 472 (D.C. Cir. 1991). The question under Rule 12(b)(6) is not whether the plaintiff will prevail, but whether he has properly stated a claim. *Price v. Crestar Securities Corp.*, 44 F. Supp. 2d 351, 353 (D.D.C. 1999) "[I]f as a matter of law 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations,' a claim must be dismissed" *Neitzke v. Williams,* 490 U.S. 319, 327 (1989) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

## I.    The Second Amended Complaint Fails to State a Claim under Title VII of the Civil Rights Act.

In Count One, Coleman alleges that Pepco committed "repeated acts of retaliation against Plaintiff" and that Local 1900 "aided and abetted in the retaliation" and "collu[ded] with Pepco in committing acts of retaliation" and thereby violated Title VII. (Cmpl. ¶¶ 54, 59) Coleman's Title VII claim must be dismissed because Title VII does not create a cause of action against those who allegedly aid and abet the retaliatory acts of others and because the complaint does not allege that, in the three hundred days before he filed his charge with the EEOC, Local 1900 took any actions against Coleman that could be characterized as materially adverse to a reasonable employee.

Title VII prohibits employers and unions from retaliating against employees for engaging in conduct protected by Title VII.  42 U.S.C. § 2000e-3(a).  Title VII, however, does not contain any provision creating a cause of action against a union that colludes with or aids and abets an employer in taking unlawful retaliatory action against an employee.  As the court stated in *Wallace v. Skadden, Arps, Slate, Meagher & Flom,* 715 A.2d 873 (D.C. 1998), "there is no provision in Title VII proscribing 'aiding or abetting'".  *Id.* at 889; *see Rodolico v. Unisys Corp.*, 189 F.R.D. 245 (E.D.N.Y. 1999) ("the Court notes that the NYHRL, unlike . . . Title VII . . . , contains an 'aiding and abetting' component.")  The allegation that Local 1900 aided and abetted Pepco does not therefore state a claim under Title VII.

The amended complaint, moreover, does not allege that, in the 300 days before he filed his charge of discrimination, Local 1900 itself engaged in any unlawful retaliatory conduct.[1]  In *Burlington Northern and Santa Fe Railway v. White*, 126 S. Ct. 2405, 2006 U.S. Lexis 4895 (June 22 2006), the Supreme Court considered the scope and meaning of Title VII's anti-retaliation provision.  The Court rejected the proposition that Title VII prohibited only retaliatory acts that occur at the workplace but, agreeing with the D.C. Circuit, emphasized that employees were protected, not from all forms of retaliation, but only from those with

---

[1]     In the District of Columbia, the statute of limitations for filing a charge of discrimination with the EEOC is 300 days.  42 U.S.C. § 2000e-5(c)(1).   Any Title VII claim based on events that took place more than 300 days before the charge was filed would be time-barred.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002) (Title VII "precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period.").

materially adverse consequences causing tangible harm to the employee.  *See Rochon v. Gonzales,* 438 F.3d 1211, 1219 (D.C. Cir. 2006).  As stated by the Supreme Court, "the [anti-retaliation] provision covers those (and only those) employer actions that would have been materially adverse to a reasonable employee or job applicant.  In the present context, that means that the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination."  *Burlington Northern,* 2006 U.S. Lexis 4895 at 8.

Coleman filed his charge of discrimination on November 5, 2004.  (Cmpl. ¶ 3)  According to the second amended complaint, in the three hundred days prior to November 5, 2004, Local 1900 told Coleman that it would grieve his discharge and pursue that and other grievances to arbitration; conveyed to Coleman a settlement offer that Coleman rejected; scheduled an arbitration hearing over the written reminder issued by Pepco to Coleman; conducted two meetings to prepare for that arbitration case; was unable to recall that a Pepco supervisor had made certain statements six months earlier regarding the issuance of the written reminder; refused Coleman's request for a meeting to discuss how his grievances had been handled and failed to respond to his expressions of concern about the preservation of documents and the processing of grievances.  (Cmpl. ¶¶ 34-35, 40-47)

None of these acts or omissions could be accurately characterized as the type of materially adverse action that would dissuade a reasonable employee from making or supporting a charge of discrimination.  Indeed, what the allegations show

8

is that Local 1900 filed and processed a grievance in response to every disciplinary action taken by Pepco against Coleman.  Coleman's allegation that a union steward was unable to recall a statement made six months earlier by a Pepco supervisor at a step-two grievance meeting does not describe a materially adverse employment action – particularly since, as Coleman acknowledges, he also attended that step-two grievance meeting, recalled the statement, and was perfectly capable of testifying about what the supervisor had or had not said.[2]  (Cmpl. ¶ 28, 41)  And the allegation that Local 1900 failed to respond to either Coleman's request for a meeting or his expressions of concern also falls far short of constituting a materially adverse action.  Neither the steward's faulty memory nor Local 1900's alleged failure on certain occasions to respond to Coleman caused Coleman any substantial harm and neither was the type of action that could dissuade a reasonable employee from filing or supporting a charge of discrimination.

In *Burlington* and *Rochon*, the Supreme Court and the D.C. Circuit cautioned against characterizing insignificant conflicts and disparities as forms of actionable retaliation.  *Burlington,* 2006 U.S. Lexis 4895 at 26-29; Rochon, 438 F.3d at 1219.  As the complaint in this case shows, Local 1900 filed and processed several grievances on Coleman's behalf.  Coleman's complaint against Local 1900 is based

---

[2]    Whether testimony about what had been said in a grievance meeting would have been admissible is doubtful.  Because the purpose of such meetings is to settle pending grievances, arbitrators frequently exclude testimony describing statements made during grievance meetings.  Bornstein, Gosline and Greenbaum, Labor and Employment Arbitration §5.02[2] at 5-6 (2006) ("Indeed, this approach is so widely recognized that the arbitrator may well squelch any attempts to introduce such discussions into the record.")

9

on what is, at most, minor conflicts or disagreements, such as the failure to recall a statement or the failure to respond to a request for a meeting. Such events do not constitute actionable retaliation, and, for that reason, the second amended complaint does not state a claim against Local 1900 for violation of Title VII.

## II.    The Second Amended Complaint Fails to State a Claim under the D.C. Human Rights Act.

The D.C. Human Rights Act, unlike Title VII, does include a provision that prohibits persons from aiding or abetting others in committing acts prohibited by the DCHRA. D.C. Code. Ann. 2-1402.62. Coleman's amended complaint, however does not state a claim under that provision. His claim under D.C. law is preempted by §301 of the LMRA, because it would require the Court to interpret a collective bargaining agreement. That claim is also preempted by the federal duty of fair representation because it challenges Local 1900's conduct as Coleman's bargaining representative, a subject that is governed exclusively by federal law. Even if that claim were not preempted, it should still be dismissed, because the amended complaint does not contain any timely allegations that, if true, would subject Local 1900 to liability under the DCHRA.

A.    <u>Coleman's Claim under the D.C. Human Rights Act is Preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. §185(a).</u>

According to the amended complaint, Local 1900 violated the D.C. Human Rights Act by, among other things, "fail[ing] to enforce provisions of the Contract Agreement between itself and Pepco as it related to the timely processing of grievances." (Cmpl. ¶¶ 13(c), 26) Because resolution of Coleman's claim under the

10

DCHRA would require the Court to interpret the collective bargaining agreement, that claim is preempted by §301 of the Labor Management Relations Act.

Section 301 gives federal district courts jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization."  29 U.S.C. §185(a).  Suits that fall within the scope of §301 are preempted by federal law, even if the complaint does not on its face refer to §301 or any other federal law.  In such suits, federal law completely supplants state law, even if federal law is not invoked.  *Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 560 (1968).  "[A]ny claim purportedly based on that pre-empted state law is considered from its inception, a federal claim."  *Caterpillar, Inc, v. Williams,* 482 U.S. 386, 393 (1987).  As the Supreme Court explained, "the preemptive force of §301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.'"  *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 23-24 (1983).

Section 301 preemption is not limited to suits for breach of contract; suits alleging tortious conduct or violations of state statutory law may also be preempted.  In *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985), for example, the Supreme Court held that §301 preempted a state tort action alleging a bad faith delay in making disability payments under a collective bargaining agreement.  And, in IBEW *v. Hechler*, 481 U.S. 851 (1987), the Court held that §301 preempted the claim of an injured employee who alleged that the union had breached a duty to provide her with a safe workplace.  As articulated by the Supreme Court, §301

11

completely preempts any state law claim that is "founded directly on rights created by collective bargaining agreements, and also claims 'substantially dependent on analysis of a collective bargaining agreement.'"    *Caterpillar*, 482 U.S. at 394 (quoting *Hechler*, 481 U.S. at 859 n.3).

As this Court has explained, "State law based claims that depend on construction and application of terms of a collective bargaining agreement are preempted.  Those that have a basis wholly independent of the labor contract are not."  *Black v. NFL Players' Association*, 87 F. Supp. 2d 1, 4 (D.D.C. 2000) (claim that racially discriminatory conduct constituted tortuous interference with contract was preempted by §301 because it was not independent of the collective bargaining agreement); *accord Sokos v. Hilton Hotels Corp.*, 283 F. Supp. 2d 42 (D.D.C. 2003) (claims for wrongful discharge and tortious interference deemed preempted); *see Brown v. Gino Morena Enterprises*, 44 F. Supp. 2d 41, 44 (D.D.C. 1999) (When an employee sues his employer for breach of contract and his union for breach of the duty of fair representation, "any pendent claims by such an employee are preempted by §301 if the application of state law requires the interpretation of a collective bargaining agreement.")

As several courts have held, claims under state anti-discrimination laws, such as the DCHRA, are preempted by §301 if resolution of those claims would require interpretation of a collective bargaining agreement.  *Fant v. New England Power Service Co.*, 239 F.3d 8, 14-16 (1st Cir. 2001) (claim of handicap discrimination under Massachusetts omnibus discrimination law); *Reece v. Houston*

12

*Lighting & Power Co.*, 79 F.3d 485 (5th Cir. 1996) (claim of race discrimination under Texas labor Code); *Jones v. Truck Drivers Local 299,* 838 F.2d 856, (6th Cir. 1988) ("plaintiffs' [sex discrimination] claim against the union for failure to represent fairly under the contract is preempted by federal law, which governs interpretation of the collective bargaining agreement.").

Coleman's DCHRA claim depends on the interpretation of a collective bargaining agreement.   He alleges that the collective bargaining agreement requires grievance meetings to be held within certain time periods (Cmpl. ¶ 26) and that Local 1900 violated the DCHRA by, *inter alia,* "fail[ing] to enforce provisions of the Contract Agreement . . . as it related to the timely processing of grievances." (Cmpl. ¶ 13(c))  To decide the merits of that claim, the Court would have to review the grievance provisions of the collective bargaining agreement, determine what they do and do not require and whether those provisions had been violated, either by Pepco or Local 1900.  Because that claim would require the Court to interpret the collective bargaining agreement, it is preempted by §301 of the LMRA.

B.    Coleman's Claim under the D.C. Human Rights Act is Preempted by the Federal Duty of Fair Representation.

The complaint in this case challenges actions that Local 1900 took, or failed to take, as Coleman's bargaining representative.  Most of the allegations of fact concern the manner in which Local 1900 processed the several grievances that it filed on Coleman's behalf.  In Count I, Coleman alleges that the manner in which Local 1900 processed his grievances aided and abetted Pepco and violated a duty

imposed by the DCHRA, a state statute. The obligations owed by a union, acting as a representative, to the employees that it represents is, however, an area governed exclusively by federal law.

The National Labor Relations Act, 29 U.S.C. § 151 *et seq.*, authorizes unions chosen by a majority of employees in a bargaining unit to act as the exclusive representative of all employees in that unit. 29 U.S.C. § 159(a). In several cases, the Supreme Court has held that this statutory authority to represent all employees in a bargaining unit imposes a duty to represent all employees fairly. *E.g., Brieninger v. Sheet Metal Workers Local 6*, 493 U.S. 67, 73 (1989) ("We have long recognized that a labor organization has a statutory duty of fair representation under the National Labor Relations Act.") As the Supreme Court explained in *Vaca v. Sipes*, 386 U.S. 171 (1967), "Under this doctrine, the exclusive agent's statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination towards any, to exercise its discretion in complete good faith and honesty, and to avoid arbitrary conduct." *Id.* at 177. Thus, federal law imposes on unions a duty of fair representation.

*Vaca v. Sipes* established that the federal duty of fair representation preempts and displaces state law. In *Vaca,* an employee discharged for poor health sued both his employer and the union that had processed his grievance, alleging that he had in fact been fit for work. In the United States Supreme Court, the petitioning union argued that the state court, which had upheld the verdict against

14

the union, had "applied a standard that was inconsistent with governing principles of federal law with respect to a union's duty to an individual employee." *Id.* at 189. The Supreme Court agreed, stating that the complaint in *Vaca* had "alleged a breach of a duty grounded in federal statutes, and that federal law therefore governs his cause of action." *Id.* at 177. Accordingly, any claim that a union has failed to fulfill its obligations to an employee that it represents is governed solely by federal law.

Following *Vaca*, the lower federal courts have uniformly held that any claim that a union has failed to fulfill an obligation owed, as a representative, to employees that it represents is governed exclusively by federal law. As the First Circuit stated in *BIW Deceived v. Local S6, Marine and Shipbuilding Workers*, 132 F.3d 824, 831 (1st Cir. 1997), "federal law completely governs the duties owed by an exclusive collective bargaining representative to those within the bargaining unit." *Accord, Thomas v. Letter Carriers*, 225 F.3d 1149, 1158 (10th Cir. 2000) (state wrongful discharge and civil conspiracy claims preempted by duty of fair representation); *Richardson v. Steelworkers*, 864 F.2d 1162, 1169 (5th Cir. 1989) ("federal law . . . entirely govern[s] the duties which an NLRA collective bargaining representative owes, by virtue of its position as such, to the workers it represents in that capacity"); *Johnson v. Food and Commercial Workers*, 828 F.2d 961, 967 (3rd Cir. 1987); *Peterson v. Air Line Pilots*, 759 F.2d 1161, 1168-71 (4th  Cir. 1985); *Maynard v. Revere Copper Products, Inc.*, 773 F.2d 733, 735 (6th Cir. 1985) ("The duty of fair representation relates to an area of labor law which has been so fully

15

occupied by Congress as to foreclose state regulation."); *Condon v. Local 2944, Steelworkers*, 683 F.2d 590, 594-95 (1st Cir. 1982); *Cahoon v. IBEW Local 261,* 175 F. Supp. 2d 220, 223 (D. Conn. 2001 ("the federal duty of fair representation completely preempts the field of duties owed by a union to collective bargaining unit members in connection with representational activities"); *Reiss v. Railway and Airline Clerks*, 629 F. Supp. 1029, 1030 (E.D. Pa. 1986) ("Federal law has totally displaced state law in regard to claims arising from a union's conduct in its capacity as a collective bargaining representative."); *Curran v. Oil, Chemical & Atomic Workers*, 582 F. Supp. 420, 422 (N.D.N.Y. 1984) ("This relationship between a union and its members is governed exclusively by federal law . . .."); *Globig v. Johns-Manville Sales Co.*, 486 F. Supp. 735, 741 (E.D. Wis. 1980) ("the Union's duty to its members is governed by federal law").

*Vaca* and its progeny thus establish that federal law, and only federal law, governs a union's conduct as a bargaining representative. A union breaches its duty of fair representation by treating a union-represented employee in a discriminatory manner. *Vaca*, 386 U.S. at 190. Accordingly, courts have consistently held that the duty of fair representation preempts an employee's claim that his union representative violated state anti-discrimination law by treating him or her in a discriminatory manner. *Welch v. General Motors Corp.*, 922 F.2d 287, 293-94 (6th Cir. 1990) (handicap discrimination claim under Michigan law); *Maynard v. Revere Copper Products, Inc.*, 773 F.2d 733, 735 (6th Cir. 1985) (same); *Madison v. Set Painters Local 729,* 132 F. Supp. 2d 1244, 1256-60 (C.D. Cal. 2000) (race

discrimination claim under California law); *Rodolico v. Unisys Corp.*, 96 F. Supp. 2d 184, 187-89 (E.D.N.Y. 2000) (age discrimination claim under New York law); *Snay v. U.S. Postal Service*, 31 F. Supp. 2d 92, 99-100 (N.D.N.Y. 1998) (disability and sex discrimination claim New York law); *Wilhelm v. Sunrise Northeast, Inc.*, 923 F. Supp. 330, 336-37 (D. Conn. 1995) (discrimination based on sexual orientation under Connecticut law).   In this case, the federal duty of fair representation preempts Coleman's claim that Local 1900, acting as his representative, violated D.C.'s anti-discrimination law.

C.    Coleman has Failed to State a Timely Claim Against Local 1900 for Aiding and Abetting Unlawful Retaliation under the D.C. Human Rights Act.

The D.C. Human Rights Act makes it unlawful "for any person to aid, abet, invite, compel, or coerce the doing of any of the acts forbidden under the provisions of this chapter."   D.C. Code Ann. 2-1402.62.   In *Wallace*, the District of Columbia Court of Appeals observed that under this provision "[a]n aider or abetter is one who 'in some sort associates himself with the venture . . . participates in it as something he wishes to bring about , [and] seeks by his action to make it succeed." 715 A.2d at 888 (quoting *Roy v. United States,* 652 A.2d 1098, 1104 (D.C. 1995)).   A one-year statute of limitation applies to claims under the D.C. Human Rights Act. D.C. Code Ann. 2-1403.16(a); *Boulton v. Institute of International Education*, 808 A.2d 499, 503 n.2 (D.C. 2002).   Accordingly, to state a claim under the DCHRA for unlawfully aiding and abetting Pepco in retaliating against him, Coleman must allege that in the year before he filed his complaint, Local 1900 engaged in conduct

17

that satisfies the standard articulated in *Wallace*. Examination of the amended complaint shows that he has not.

According to the second amended complaint, Pepco's final act of retaliation against Coleman was his discharge in March 2004, which occurred more than a year before Coleman filed his initial complaint on June 3, 2005. (Cmpl. ¶¶ 24, 33) The complaint alleges that in the year prior to June 3, 2005, Local 1900 scheduled an arbitration hearing over the written reminder issued to Coleman; conducted two meetings to prepare for the arbitration hearing; failed to recall a statement made six months earlier by a Pepco supervisor at a step-two grievance meeting; refused a request for a meeting to discuss how Coleman's grievances had been handled and failed to respond to his expressions of concern. (Cmpl. 40-47) None of these actions can be accurately characterized as aiding Pepco's alleged retaliation. The alleged facts that a union steward could not recall a specific statement purportedly made six months earlier and that Local 1900 did not respond to Coleman's expressed concerns does not even remotely suggest that Local 1900 associated itself with Pepco's alleged retaliation or participated in the retaliation as something Local 1900 wished to bring about. Particularly since Local 1900 was processing grievances challenging Pepco's alleged acts of retaliation, Local 1900's efforts on Coleman's behalf cannot be characterized as something that aided and abetted Pepco's retaliation. The amended complaint does not, therefore contain a timely allegation that Local 1900 aided and abetted Pepco in retaliating against Coleman.

Although Coleman's DCHRA claim must be dismissed regardless of whether

his most recent amendment, adding Local 1900 as a defendant, relates back, Local 1900 notes that under Federal Rule 15(c) the second amended complaint does not relate back.  Rule 15(c) provides that an amendment changing the name of a party will relate back only if the newly-named party "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party."   F.R.Civ.P.  15(c)(3)(B).   Accordingly, such an amendment will relate back only if its purpose is to correct a mistake concerning the identity of the proper party.  *Gipson v. Wells Fargo Corp.,* 382 F. Supp. 2d 116, 119 (D.D.C. 2005).

As the D.C. Circuit explained in *Rendall-Speranza v. Nassim*, 107 F.3d 913 (D.C. Cir. 1997), Rule 15(c) addresses "the problem of a misnamed defendant" – the defendant whose name is stated incorrectly and who is therefore "the beneficiary of a mere slip of the pen, as it were."  *Id.* at 918.  *See Grigsby v. Johnson*, 1996 U.S. Dist. Lexis 7034 at 16-19 (D.D.C. May 13, 1996) (Rule 15(c) permits relation back "where the proper defendant is already before the court and the effect is merely to correct the name under which he is sued.") (quoting *Worthington v. Wilson*, 8 F.3d 1253, 1256 (7th Cir. 1993)).  In *Gipson*, for example, a plaintiff who intended to sue her employer, Wells Fargo Home Mortgage, but who mistakenly filed her complaint against the Wells Fargo Corporation, filed an amended complaint correcting the error.  The amended complaint related back because it was "a case where the right party ha[d] been sued by the wrong name and not where the plaintiff ha[d] named the wrong defendant."  382 F. Supp. 2d at 120.

19

An amendment does not relate back if its purpose is to add a different defendant whose identity the plaintiff was fully aware of when he filed his suit. In *Rendall-Speranza*, a plaintiff sued her supervisor for battery and infliction of emotional distress and then sought leave to add her employer when she realized that it might be liable for the supervisor's conduct. The court held that the amendment would not relate back where "the mistake [was] one of judgment rather than a mere misnomer." 107 F.3d at 917-18. After examining Rule 15 and its Advisory Committee Notes, the court observed that "[n]othing in the Rule or in the Notes indicates that the provision applies to a plaintiff who was fully aware of the potential defendant's identity but not its responsibility for the harm alleged." *Id.* at 918 *accord Sparshott v. Feld Entertainment, Inc.*, 89 F. Supp. 2d 1, 3 (D.D.C. 2000).

There can be no question that Coleman was fully aware of Local 1900's name and identity before he filed this suit. In his complaint, he identified Local 1900 and the IBEW as separate entities. (Cmpl. ¶ 6) Coleman chose to sue the IBEW rather than Local 1900 because "he believed that IBEW was responsible for answering the claim on behalf of Local 1900." ((Plaintiff's Opposition to Defendant's [IBEW's] Motion to Dismiss ("Pl's Mem.") at 7) According to Coleman, that erroneous belief was created primarily by the EEOC, which, he says, named the IBEW, rather than Local 1900, as the respondent to his charges of discrimination. (Pl's Mem. at 4-5) It may be, as the Court suggested in its decision granting Coleman leave to amend his complaint, that Coleman has offered a reasonable explanation of why he believed that the IBEW, rather than Local 1900, was the proper party defendant. (*See*

20

Memorandum and Order at 2-3, June 2, 2006)   The reasonableness of his belief, however, is not at issue.   He amended his complaint when he realized that he had sued the wrong defendant.  The purpose of his proposed amendment was thus not to correct the name by which he identified the defendant.   It was to substitute a defendant whose name, address and identity he was well aware of before he filed this suit.  Such amendments do not relate back.

The only allegation in the complaint regarding events that transpired within the one year before February 2006, the date on which Coleman moved to add Local 1900 as a party, is the allegation that in July 2005 Local 1900 told Coleman that it was attempting to schedule an arbitration hearing but did not respond to Coleman's expression of concern.  (Cmpl. ¶ 47)  Because that allegation, even if true, does not state a claim under the DCHRA, that claim must be dismissed.

### III.    The Second Amended Complaint Fails to State a Claim for Breach of the Duty of Fair Representation.

In his second amended complaint, Coleman claims that Local 1900 breached the duty of fair representation by mishandling his grievances, failing to respond appropriately to his complaints of harassment and collaborating with Pepco. (Cmpl.¶ 61-63)  His fair representation claim is untimely.  With a single exception, all of the events alleged in the complaint took place more than six months before Coleman filed his initial complaint.   And, that single exception – a failure to respond to Coleman's "expressed concern" about prior union conduct (Cmpl. ¶ 47) – did not constitute a breach of the duty of fair representation.

21

Claims for breach of the duty of fair representation are governed by a six-month statute of limitations. *DelCostello v. Teamsters*, 462 U.S. 151, 172 (1983); *Adkins v. Safeway Stores*, 1991 U.S. Dist. Lexis 12616 at 6-7 (D.D.C. June 21, 1991) (Lamberth, J.). A fair representation claim based on events that transpired more than six months before the complaint was filed is untimely.

Coleman filed his initial complaint on June 3, 2005. Any fair representation claim based on events that transpired before December 3, 2004 would therefore be time-barred. The complaint shows that – with one exception – all of the events on which Coleman's bases his claim took place before December 3, 2004. (Cmpl. ¶¶ 14-46) To the extent that his fair representation claim is based on those events, it is untimely. Under Rule 12(b)(6), an untimely claim may be dismissed if the complaint shows on its face that the claim is time-barred. *Doe v. United States Department of Justice*, 753 F.2d 1092, 1115 (D.C. Cir. 1985). Since the amended complaint in this case shows that Coleman's fair representation claim is untimely, it should be dismissed.

The single averment that might not be untimely – depending on whether the second amended complaint relates back – is Coleman's allegation that in July 2005, after he filed this lawsuit, he expressed concern to, and requested an explanation from, Local 1900 about its failure to respond to his previously-expressed concerns, but that Local 1900 refused to respond. (Cmpl. ¶ 47) That allegation, even if true, would not constitute a breach of the duty of fair representation. If the second amended complaint did not relate back to the date on which the original complaint

22

was filed, even that allegation would be untimely.

As the Supreme Court held in *Vaca v. Sipes*, a breach of the duty of fair representation occurs "only when a union's conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith." 386 U.S. at 190. The Court has also stated that "a wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents." *Ford Motor Co. v. Huffman,* 345 U.S. 330, 338 (1953). The duty does not impose an obligation on unions to respond to specific inquiries from individual employees. In *Hammons v. Adams*, 783 F.2d 597, 605 (5th Cir. 1986), for example, the court of appeals rejected the plaintiffs' argument that the duty required their international union to respond to correspondence about their grievances and their treatment by the local union. In *Whitten v. Anchor Motor Freight, Inc.*, 521 F.2d 1335, 1341 (6th Cir. 1975), the court of appeals held that evidence, showing that the union had not answered the plaintiff's letters asking about the status of his grievance, was not sufficient to establish that the union had breached its duty of fair representation. And, in *Caputo v. Letter Carriers*, 730 F. Supp. 1221, 1230 (E.D.N.Y. 1990), the district court held that "as a matter of law, the failure to keep a grievant informed of the status of the grievance is not a breach of the duty of fair representation." A union's mere failure to respond to an inquiry is, as a matter of law, insufficient to show that the union has breached the duty of fair representation. Coleman's allegation that Local 1900 did not respond to his expressed concern and request for an explanation does not therefore state a claim for breach of the duty of fair representation.

23

### IV.     The Second Amended Complaint Fails to State a Claim for Intentional Infliction of Emotional Distress.

In Count Three of the amended complaint, Coleman alleges that, by taking retaliatory action and harassing him, Pepco intentionally inflicted emotional distress.  He also alleges that "Defendant aided and abetted Pepco and worked in collusion with it in committing these acts."  (Cmpl. ¶ 65)  The amended complaint does not, however, state a claim against Local 1900 for intentional infliction of emotional distress.  Like his claim under the DCHRA, Coleman's claim for infliction of emotional distress would require the Court to interpret and apply a collective bargaining agreement and is based on conduct that Local 1900 took as his bargaining representative.  The claim is therefore preempted by §301 of the LMRA and by the federal duty of fair representation.  Even if D.C. law were to be applied, however, the claim would have to be dismissed.  Coleman has not alleged that Pepco engaged in any conduct that could be characterized as outrageous within the meaning of D.C. law and has not alleged that Local 1900 took any actions that could render it liable under D.C. law as one who aids an abets another tortfeasor.  The claim therefore fails as a matter of law.

A.     <u>Coleman's Claim for Intentional Infliction of Emotional Distress is Preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. §185(a).</u>

According to Coleman, Pepco harassed him by, among other things, imposing unwarranted discipline and Local 1900 aided and abetted Pepco by, among other things, refusing to enforce the grievance procedure in Article 17 of the collective

bargaining agreement. (Cmpl. ¶¶ 24, 26) Accordingly, to determine whether Pepco wrongfully inflicted emotional distress and whether Local 1900 aided or abetted Pepco as Coleman alleges, the Court would be required to interpret and apply the collective bargaining agreement – to determine whether discipline was wrongly imposed and whether the parties complied with the contractual grievance procedure. *See Douglas v. American Information Technologies Corp.*, 877 F.2d 565, 571 (7th Cir. 1989) ("an actor will not be held liable for the intentional infliction of emotional distress 'where he has done no more than insist upon his legal rights in a permissible way.'") (quoting Restatement (Second) of Torts §46, comment g).

It is well-established that §301 of the LMRA preempts any tort claim that would require the Court to interpret a collective bargaining agreement. (*See supra* at pp. 10-13) Claims for infliction of emotional distress that would require interpretation of a collective bargaining agreement are therefore preempted. *Mattis v. Massman,* 355 F.3d 902, 907-08 (6th Cir. 2004) ("determining whether Massman's alleged harassment constituted 'outrageous conduct' would force us to look to the CBA"); *Douglas*, 877 at 568-73; *Newberry v. Pacific Racing Association*, 854 F.2d 1142, (9th Cir 1988). Because Coleman's claim for infliction of emotional distress would require the Court to interpret a collective bargaining agreement, it is preempted and must be dismissed.

B.    <u>Coleman's Claim for Intentional Infliction of Emotional Distress is Preempted by the Federal Duty of Fiar Representation.</u>

Because Coleman's claim for intentional infliction of emotional distress, like

25

his claim under the DCHRA, challenges conduct that Local 1900 took as Coleman's representative, the claim is preempted by the federal duty of fair representation. According to the second amended complaint, the manner in which Local 1900 processed the several grievances that it filed on Coleman's behalf aided and abetted Pepco in inflicting emotional distress. (Cmpl. ¶¶ 13, 19,  21, 28, 30, 34, 40-47) Coleman thus contends that in acting as his representative, Local 1900 breached a duty imposed by D.C. common law.

As explained above, the duties that a union owes to an employee when acting as his or her representative are governed exclusively by federal law. (*See supra* at pp. 13-17) State common law cannot impose duties additional to or different from those imposed by federal law. A claim that a union, acting as a representative, breached a duty imposed by state law is preempted. Accordingly, Coleman's claim that, in representing him, Local 1900 violated D.C. common law is preempted by the federal duty of fair representation.

C.    <u>Coleman has Failed to State a Claim for Aiding and Abetting Pepco's Intentional Infliction of Emotional Distress.</u>

The amended complaint alleges that Pepco intentionally inflicted emotional distress and that Local 1900 aided and abetted Pepco. If Pepco's alleged conduct did not constitute tortious infliction of emotional distress, then the claim against Local 1900 must be dismissed, since one cannot be liable for aiding and abetting conduct that is not itself tortious or unlawful. *See Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983) (civil liability for aiding and abetting requires a wrongful

act by the party aided) ; *Ungar v. The Islamic Republic of Iran*, 211 F. Supp. 2d 91, 99 (D.D.C. 2002).

A party is liable for intentional infliction of emotional distress only if it engages in extreme or outrageous conduct that intentionally or recklessly causes severe emotional distress to another. *Joyner v. Sibley Memorial Hospital*, 826 A.2d 362, 373 (D.C. 2003); *Kerrigan v. Britches of Georgetowne, Inc.,* 705 A.2d 624, 628 (D.C. 1997). "[T]he plaintiff must allege conduct 'so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'" *Id.* (quoting Restatement (Second) of Torts § 46, comment d).

In *Coleman v. Pepco*, 422 F. Supp. 2d 209 (D.D.C. 2006), Coleman also alleged that Pepco's conduct – essentially the same conduct alleged in this case – constituted intentional infliction of emotional distress. This Court held that Coleman had "not remotely state[d] a claim of IIED." *Id.* at 215. For that reason alone, Coleman's claim for infliction of emotional distress should be dismissed.[3]

---

[3]     The D.C. Court of Appeals has frequently emphasized its reluctance to characterize as extreme and outrageous conduct that occurs in the context of an employment relationship. *Joyner,* 826 A.2d at 373; *Kerrigan*, 705 A.2d at 628. Mere discharge of an employee without good cause does not constitute outrageous conduct. *Crowley v. North American Telecommunications Ass'n*, 691 A.2d 1169, 1171-72 (D.C. 1997). In *Joyner,* the D.C. Court of Appeals held that the plaintiff has not alleged sufficiently outrageous conduct by averring that her employer had intentionally closed a door on her hand to prevent her from leaving a meeting. 826 A.2d at 373. In *Kerrigan*, the court held that the plaintiff had not alleged sufficiently outrageous conduct by claiming that his employer had targeted him for an investigation, manufactured evidence against him, leaked information about him to other employees, and demoted him without cause. 705 A.2d at 628. *See Hoffman*

Even if Coleman had alleged that Pepco had engaged in outrageous conduct, his claim would still fail as a matter of law.  As the D.C. Circuit explained in *Halberstam*, a party may be civilly liable for aiding and abetting another's wrongful conduct only if it "knowingly and substantially assist[ed] the principal violation." 705 F.2d at 477.  In *Ungar*, this Court held that the government of Iran was not civilly liable for aiding and abetting a murder committed by members of the terrorist organization HAMAS, despite the fact that Iran had provided HAMAS with funds, weapons and training.  The court concluded that, by providing those resources, Iran had not provided knowing and substantial assistance in the murder itself.  211 F. Supp. 2d at 99.

In this case, Coleman has not alleged any facts that, if true, would show knowing and substantial assistance from Local 1900 to Pepco in the alleged retaliation and harassment.  Coleman does not allege that Local 1900 played any role whatsoever in his discharge, discipline or any other retaliatory actions that Pepco is alleged to have taken.  The amended complaint alleges only that in one instance the Local 1900 did not enforce the time limits imposed by the contractual grievance procedure; that a union steward could not recall a statement made

---

*v. Hill and Knowlton, Inc.,* 777 F. Supp. 1003, 1005 (D.D.C. 1991) (employee discharged after employer forced him to work in demeaning circumstances and made false accusations knowing that they would be communicated to co-workers and prospective employers); *Elliott v. Healthcare Corp.*, 629 A.2d 6, 9 (D.C. 1993) (discharge without good cause); *Smith v. Union Labor Life Insurance Co.*, 620 A.2d 265, 270 (D.C. 1993) (dismissal without prior disciplinary procedures); *Adams v. George W. Cochran & Co.*, 597 A.2d 28, 35 (D.C. 1991) (truck driver discharged for refusing to violate law by driving a truck without an inspection sticker).

28

months earlier by a Pepco supervisor at a step-two grievance meeting; and that Local 1900 did not respond to Coleman's expressions of concern and inquiries about his grievances. (Cmpl. ¶¶ 26, 43, 45-47) Those allegations, even if true, would not show that Local 1900 had provided knowing and substantial assistance to Pepco in harassing Coleman or retaliating against him. His claim against Local 1900 for aiding and abetting Pepco in inflicting emotional distress must therefore be dismissed.

<u>CONCLUSION</u>

For all the foregoing reasons, the Court should grant Local 1900's motion and should dismiss Coleman's second amended complaint.

Respectfully submitted,

 /s/ Robert D. Kurnick
Robert D. Kurnick, D.C. Bar No. 243683
Sherman, Dunn, Cohen, Leifer & Yellig, P.C.
900 Seventh Street, N.W., Suit 1000
Washington, D.C. 20001
(202) 785-9300

Attorney for Defendant Local
Union 1900 of the International
Brotherhood of Electrical Workers

29

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this twenty-fourth day of July 2006, I have mailed a copy of the foregoing motion to dismiss, memorandum of points and authorities in support of that motion and proposed order to:

Elliotte Patrick Coleman
2730 Knox terrace, S.E.
Washington, D.C. 20020


 /s/ Robert D. Kurnick
Robert D. Kurnick